No. 97-092

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


JAMES V. KRAUSE and DOLORES R. KRAUSE,

Plaintiffs and Appellants,

v.

DAN NEUMAN and RITA NEUMAN,

Defendants and Respondents.


APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.


COUNSEL OF RECORD:

For Appellants:

Jon G. Beal; Datsopoulos, MacDonald & Lind, Missoula, Montana

Michael G. Black; Lukins & Annis, Spokane, Washington

For Respondents:

William C. Watt, Sara J. Johnson; Mullendore, Tawney & Watt,
Missoula, Montana


Submitted on Briefs: August 14, 1997

Decided:    September 9, 1997
Filed:


_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellants, James V. Krause and Delores R. Krause (the Krauses) appeal from the December 10, 1996 order of the Montana Fourth Judicial District Court, Missoula County, dismissing their amended complaint for lack of subject matter jurisdiction. We affirm.

We restate the issues raised on appeal as follows:

1)  Under federal statutory law, is jurisdiction to adjudicate interests in Indian trust lands vested in federal courts to the exclusion of state courts?

2)  Does resolution of the Krauses' claims of breach of contract, tortious misrepresentation, and fraudulent inducement require a determination of rights involving Indian trust lands over which the state District Court has no subject matter jurisdiction?

Factual and Procedural Background

Respondent Dan Neuman is an enrolled member of the Confederated Salish and Kootenai Tribes (the Tribes).  He has a beneficial interest in two tracts of Indian allotment land located within the exterior boundaries of the Flathead Indian Reservation.  The United States holds title to the two tracts, which cover approximately 1.46 acres, in trust for the benefit of Mr. Neuman.  Since their allotment, the two tracts have been transferred three times: from the original allottees to the Tribes, from the Tribes to Mr. Neuman's mother, Josephine Neuman, and from Josephine to her son.  All of these transfers were made with the approval of the Bureau of Indian Affairs (BIA) pursuant to federal statute.

In May 1996, desiring to sell his land and the house situated thereon, Mr. Neuman sought the assistance of the Division of Lands of the Tribes, which processes all documents for the conveyance of trust land on the Flathead Reservation, to advertise the sale of the trust property.  In June 1996, the Division of Lands and the BIA began working to clear title to the two tracts of land so that Mr. Neuman could transfer his interest outside of the Tribes.  Mr. Neuman also listed the property with a Missoula real estate agent.

The Krauses are residents of the state of Washington.  While visiting their daughter in Missoula, Montana, they saw Mr. Neuman's listing in a Missoula real estate brochure.  The Krauses were interested in finding a retirement home near Missoula and contacted the listing agent.  The Krauses proceeded to negotiate with the agent to purchase Mr. Neuman's trust property and eventually signed a standard buy-sell agreement.  The handwritten portion of the agreement gave the Krauses the option of purchasing "in trust or patented."  Mrs. Krause is an enrolled member of the Turtle Mountain Chippewa Tribe, Pembina Band, so the Krauses first sought to purchase the land in trust.  However, upon being informed by the Tribes that it would not recognize

Mrs. Krause as an Indian eligible to purchase the land in trust, the Krauses decided to purchase the land in fee. The parties dispute whether the Krauses were ever made aware that the federal government would have to approve the sale in fee and issue a patent before the land could be transferred. However, in a counter-offer that amended the buy-sell agreement, the Krauses required that the seller "help arrange to transfer property from trust to deeded status."

Both parties made considerable efforts and expenditures to consummate the sale. However, at the time of contracting, neither party, the Tribes' Division of Lands, nor the BIA knew that title to the two tracts was seriously clouded. The Tribes had acquired the land through an order issued by the Secretary of the Interior, which transferred the land from the non-consenting heirs of the original allottee, and the validity of the order was being questioned. In an affidavit dated January 26, 1996, the Superintendent of the Flathead Agency of the BIA stated that the Agency had been working to clear the title defect since July 1994, "and efforts to clear title continue." Three months after the agreement was signed, Mr. Neuman informed the listing agent that he wished to terminate the sale as it was apparent that the federal government would not approve the transfer of the trust property anytime soon.

The Krauses filed a complaint in the Montana Fourth Judicial District alleging breach of contract, constructive fraud, and fraudulent inducement. The Krauses prayed for specific performance or contract damages. The Neumans filed a motion to dismiss and supporting brief arguing that the District Court lacked subject matter jurisdiction over a contract action involving the sale of land located on the Flathead Indian Reservation and that the Tribes assert exclusive jurisdiction over trust land disputes. The next day, the Krauses filed an amended complaint adding fraud and negligent misrepresentation claims and deleting any prayer for specific performance. The Neumans renewed their motion to dismiss.

Subsequently, the District Court converted the Neumans' motion to dismiss into a motion for summary judgment pursuant to Rule 56, M.R.Civ.P. Both parties were allowed to submit proof of additional facts. The District Court referred the matter to a special master for oral argument on the following issues:

1) Whether the District Court lacks subject matter jurisdiction to hear the issues presented in the complaint;

2) Whether the contract claims presented by the Krauses are null and void as a matter of law; and

3) Whether the Krauses failed to name the United States as an indispensable party to the action in their complaint.

After hearing oral argument, the special master found that the claims alleged by the Krauses had a substantial nexus to Mr. Neuman's allotment of Indian trust land and that, therefore, federal law precluded the District Court from exercising jurisdiction. The special master further found that state court jurisdiction would interfere with the Tribes' right to self-governance.

The Krauses filed an objection to the special master's report; however, on December 10, 1996, the District Court issued an order affirming the special master's report and dismissing the action without prejudice for lack of subject matter jurisdiction. The court applied the test laid out in State ex rel. Iron Bear v. District Court of the Fifteenth Judicial Dist. (1973), 162 Mont. 335, 512 P.2d 1292, and determined it was precluded by federal law, specifically 28 U.S.C. 1353 and 1360, from exercising jurisdiction. The court reasoned that it could not decide the Krauses' breach of contract and tort claims without determining whether Mr. Neuman owned the land in fee or in trust and whether he had the ability to transfer his interest.

Standard of Review

We review a district court's grant of summary judgment de novo. Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. Thus, we apply the standards set forth in Rule 56, M.R.Civ.P., to determine that no material issues of fact exist and that the movant is entitled to summary judgment as a matter of law. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

Discussion

Because Congress has plenary and exclusive powers to regulate Indian affairs, a state court's subject matter jurisdiction over such affairs is limited to that explicitly allowed by Congress. Bryan v. Itasca County (1976), 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710. Further, the U.S. Supreme Court has recognized that Indian tribes are self-governing entities and, "until Congress acts, the tribes retain their existing sovereign powers." U.S. v. Wheeler (1978), 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303, 313. Thus, in determining whether the District Court properly dismissed for lack of subject matter jurisdiction, we must consider the interests of the federal and tribal courts in adjudicating disputes involving Indian affairs.

In Iron Bear, this Court held that before a district court can assume jurisdiction over any matters involving Indian affairs, "it must find subject matter jurisdiction by determining: (1) whether the federal treaties and statutes applicable have preempted state jurisdiction; (2) whether the exercise of state jurisdiction would interfere with reservation self-government; and (3) whether the Tribal Court is currently exercising

jurisdiction or
has exercised jurisdiction in such a manner as to preempt state jurisdiction."  Iron Bear,
512 P.2d at 1299.  If the court finds that assuming jurisdiction over a dispute involving
Indian affairs is preempted by federal law or that assuming jurisdiction will interfere with
the Tribes' right to govern or to resolve the dispute, it has no subject matter jurisdiction
over the dispute.  Geiger v. Pierce  (1988), 233 Mont. 18, 758 P.2d 279.
In its order, the District Court found that two federal statutes, 28 U.S.C. 1360
and 1353, preempt state court jurisdiction in this case.  The Neumans also argue that state
court jurisdiction over this action would impermissibly interfere with tribal self-
government.  However, because we agree with the District Court's finding that federal
statutes preclude state subject matter jurisdiction, we will limit discussion to the first part
of the Iron Bear test.
1. Under federal statutory law, is jurisdiction to adjudicate interests in
Indian trust lands vested in federal courts to the exclusion of state courts?

The General Allotment Act of 1887, ch. 119,  1, 24 Stat. 388 (1887), provided
the statutory framework by which certain Indian lands were first designated for allotment.
Each allotment had to be approved by the Secretary of the Interior and would then be
held in trust by the United States for the benefit of the individual Indian allottee.  The
1887 Act provided that at the expiration of the trust period, the United States would
convey the trust land by patent in fee to the allottee. General Allotment Act, ch. 119,
1, 24 Stat. 388 (1887).
Today, the General Allotment Act is codified at 25 U.S.C.   331-58.  Under the
Act, an allottee wishing to transfer his or her interest in Indian trust land before the
expiration of the trust period must have the approval of the Secretary of the Interior, 25
U.S.C.   405, 483, and any conveyance of land, or contract concerning the same,
without this approval is "null and void."  25 U.S.C.   348. The Allotment Act also
creates a cause of action in the federal district court for those claiming an interest under
the Act.  25 U.S.C.   345. This section states:
All persons who are in whole or in part of Indian blood or descent who are
entitled to an allotment of land under any law of Congress, or who claim
to be so entitled to land under any allotment Act or under any grant made
by Congress, or who claim to have been unlawfully denied or excluded
from any allotment or any parcel of land to which they claim to be lawfully
entitled by virtue of any Act of Congress, may commence and prosecute or
defend any action, suit, or proceeding in relation to their right thereto in the
proper district court of the United States.

25 U.S.C.   345.

The Supreme Court has held that this language vests exclusive jurisdiction in federal courts to determine disputes involving allotments.  See U.S. v. Mottaz (1986), 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841; McKay v. Kalyton (1907), 204 U.S. 458, 27 S.Ct. 346, 51 L.Ed. 566 (interpreting the predecessor statute to 25 U.S.C. 345).  In Mottaz, the Court stated that  345 grants federal district courts subject matter jurisdiction over two types of cases:  (1) suits seeking the issuance of an allotment; and (2) suits involving "the interest and rights of the Indian in his allotment or patent after he has acquired it." Mottaz, 476 U.S. at 845 (quoting Scholder v. U.S.  (9th Cir. 1970), 428 F.2d 1123, 1129, cert. denied (1970), 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246).

The Ninth Circuit has also interpreted this statute as giving federal district courts subject matter jurisdiction over suits involving ownership, title, or other rights appurtenant to title in allotted land.  Pinkham v. Lewiston Orchards Irr. Dist. (1988), 862 F.2d 184; Christensen v. U.S. (9th Cir. 1985), 755 F.2d 705; Loring v. U.S. (9th Cir. 1979), 610 F.2d 649.

Another statutory basis for federal court jurisdiction over disputes involving allotted lands is found in Title 28, which encompasses district court jurisdiction.  See 28 U.S.C.  1353.  Section 1353 states that "[t]he district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land. . . ."  28 U.S.C.  1353.  One circuit has held that this statute was enacted for the limited purpose of giving district courts jurisdiction over any claims of right of original allotments or allotments in the first instance.  Dry Creek Lodge, Inc.  v. U.S. (10th Cir. 1975), 515 F.2d 926.  However, the special master found this interpretation inconsistent with the U.S. Supreme Court's holding in McKay, 204 U.S. at 458.  In that case, the Court held that state courts have no jurisdiction over "controversies necessarily involving a determination of the title and incidentally of the right to the possession, of Indian allotments while the same were held in trust by the United States."  McKay, 204 U.S. at 468.  We recognize that 25 U.S.C. 345 and 28 U.S.C.  1353 both provide for federal jurisdiction over disputes involving claims of right or title to allotted lands to the exclusion of state courts.

The District Court also held that 28 U.S.C.  1360 preempted its jurisdiction.  The land at issue is located on the Flathead Indian Reservation, the only reservation over

which the state of Montana has subject matter jurisdiction in "civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country." Pub. L. No. 280, 7, 67 Stat. 588, 590 (1953), codified as amended at 28 U.S.C. 1360. Though 28 U.S.C. 1360 allows state courts to exercise jurisdiction over certain civil causes of action arising in Indian country, it provides:

Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property. . . belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States . . . ; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

28 U.S.C. 1360. This Court has stated that "[a]ny state action that affects ownership of Indian trust land is closely circumscribed by 28 U.S.C. 1360(b), even where state jurisdiction has been acquired pursuant to P.L. 280." In re Marriage of Wellman (1993), 258 Mont. 131, 138, 852 P.2d 559, 563. We determine that "[o]n its face, this statute precludes state jurisdiction to adjudicate any interest in Indian trust land." Marriage of Wellman, 852 P.2d at 563.

2. Does resolution of the Krauses' claims of breach of contract, tortious misrepresentation, and fraudulent inducement require a determination of rights involving Indian trust lands over which the state District Court has no subject matter jurisdiction?

Having determined that federal statutory law preempts state subject matter jurisdiction over actions involving title to an allotment, it is necessary to decide whether a contract claim or a tort claim arising out of a contract for sale of allotted land is such an action. The Ninth Circuit has held that in determining whether 25 U.S.C. 345 or 28 U.S.C. 1353 preempt state subject matter jurisdiction, "of critical importance . . . are the claims advanced by plaintiffs." Pinkham, 862 F.2d at 187. The Krauses argue that, as amended, their complaint states a simple contract and tort action arising off of the reservation. They argue that "where the claims of the complaint are properly characterized as one for damages sounding in tort, they are not related to the ownership of title, or any rights appurtenant to an allotment, and subject matter jurisdiction cannot exist in federal court."

The U.S. Supreme Court, however, has held that state courts have no jurisdiction over "controversies necessarily involving a determination of the title and incidentally of the right to the possession" of Indian trust land. McKay, 204 U.S. at 468 (emphasis added). The District Court found that the Krauses' breach of contract and tort claims

necessarily hinge on a determination of title to Indian trust land. The District Court stated that:

[e]ssential to proving Plaintiffs' [claims] . . . is a requirement that the district court determine that the Defendants owned the land in fee simple and thus resolve the claim to land as an Indian allotment. The right of possession of land, as well as the right to sell said land, necessarily involves a question of the existence of title. Plaintiffs' aforementioned claims of action cannot be separated from the issues of title to this property.

We agree with the District Court's analysis. Count I of the Krauses' amended complaint states that the Neumans failed to honor a contract to convey real property. They also claim that the Neumans "misrepresented their ability to offer for sale and convey deeded property to the Krauses . . . and admittedly committed torts with respect to their misrepresentations as to the status of the property and their ability to convey the same." The Krauses' pleadings therefore put at issue the Neumans' "ability to offer for sale" and the "status" of the land. Further, the Neumans argue that under the Allotment Act, they could not transfer an interest in Indian trust lands without the approval of the Secretary of the Interior and that any contract to convey the same without such approval is null and void. Thus, whether Mr. Neuman properly offered his land for sale, whether a contract was formed, or whether the Neumans were justified in not performing the contract are all issues that cannot be separated from questions of title to Indian trust property. In the context of the claims advanced by the Krauses, the District Court correctly found that it had no subject matter jurisdiction.

The Krauses also argue that because they amended their original complaint to delete the prayer for specific performance, no interest in the trust property would be affected by the District Court's adjudicating their claims. However, the state does not acquire subject matter jurisdiction over Indian trust property simply because the plaintiff seeks only money damages. In Marriage of Wellman, 852 P.2d at 559, the parties were a married couple who lived on the Blackfeet Reservation and had accumulated approximately 4,000 acres of Indian trust land. The legal title to the land was held by the United States in trust for the benefit of Mrs. Wellman, a member of the Blackfeet Tribe. Mrs. Wellman filed a petition for dissolution in state district court, and Mr. Wellman sought an equitable distribution of real and personal property or, if the property could not be distributed, a monthly award for his support, care, and maintenance from the income produced by the property. Marriage of Wellman, 852 P.2d at 561. The district court found that it had no jurisdiction to adjudicate the disposition of

the Indian
trust land.

On appeal to this Court, Mr. Wellman recognized that "the District Court has no authority to transfer title to the trust land to a non-Indian," but argued that the relief he sought was a monetary share of the trust lands. Marriage of Wellman, 852 P.2d at 564.

This Court stated:

[W]e are urged to assert state court jurisdiction over Indian trust land by figuratively bringing it into state court for valuation prior to an ordered sale and division of proceeds or a monetary award equal to Robert's equitable share of the value of the land. Based on our discussion of 28 U.S.C. 1360(b) . . . we conclude that any of these actions would result in a prohibited adjudication of interests in Indian trust land.

Marriage of Wellman, 852 P.2d at 564.

Similarly, here, the Krauses assert in their brief to this Court that "the express terms of the amended complaint, which controls this matter, seek compensatory and punitive damages, as well as attorney fees but do not seek an interest in Indian trust land." Regardless of whether the Krauses pray for specific performance of the contract or for money damages for its breach, the District Court must decide the issues of liability which, as stated above, it cannot do without impermissibly asserting jurisdiction over Indian trust land.

The Neumans also ask this Court to sanction the Krauses for filing a frivolous appeal and to award the Neumans attorneys' fees, costs, and other appropriate damages. This Court, when satisfied that an appeal "was taken without substantial or reasonable grounds," may assess such damages as we deem proper. Rule 32, M.R.App.P.; CNA Ins. Co. v. Dunn (1995), 273 Mont. 295, 902 P.2d 1014. We find that the Krauses had reasonable grounds for filing this appeal; thus, we decline to impose sanctions under Rule 32.

For the foregoing reasons, we affirm the decision of the District Court.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ J. A. TURNAGE
/S/ JAMES C. NELSON
/S/ KARLA M. GRAY
/S/ JIM REGNIER