No. 91-600

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992


JOHN R. MURRAY and JUDITH R. MURRAY,
husband and wife, ERIK F. NEVA and
LAURA L. NEVA, husband and wife, and
C. GENE ENDRESEN and ARDYCE E. ENDRESEN,
husband and wife,

      Plaintiffs and Appellants,

  v.

COUNTRYMAN CREEK RANCH, a limited partnership,
CHARLES J. HERINGER, JR., RICHARD C. HOEFLE,
and DONALD E. DuBEAU,

      Defendants and Respondents.

FILED

SEP 29 1992

~~Ed Smith~~
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Stillwater,
The Honorable Russell K. Fillner, Judge presiding.


COUNSEL OF RECORD:

      For Appellants:

          Bruce E. Lee, Attorney at Law, Billings, Montana

      For Respondents:

          Robert Edd Lee, Crowley, Haughey, Hanson,
          Toole & Dietrich, Billings, Montana


                   Submitted on Briefs: April 23, 1992

                        Decided: September 29, 1992

Filed:

                Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

This is an appeal from an order of the Thirteenth Judicial District Court, Stillwater County, ruling that appellants' "equitable" easement claim is barred by laches. We affirm.

Appellants raise only the "equitable" easement question for this Court to consider, however we find the following issue raised by respondents to be dispositive.

Is appellants' claim for an "equitable" easement through Tract 143 barred by laches?

In 1972, respondents, Charles J. Heringer, Jr., Richard C. Hoefle, and Donald E. Dubeau formed a limited partnership known as the Countryman Creek Ranch (hereinafter "partnership"). Sometime in 1970, Heringer became aware of a 2025 acre ranch situated south of the Yellowstone River and a few miles west of Columbus which was being offered for sale. Heringer and Hoefle ultimately purchased the ranch with the intention of developing it for resale as recreational homesites.

In 1972, the partnership employed the Bud Hansen Agency for an initial sales campaign during that summer. In the beginning of the year, the layout, engineering, and legal work was well underway. Sales information packets were assembled and closing document forms were printed. Throughout the early period from 1970 to 1972, several developments were considered. The final scheme called for the land to be subdivided into 141 residential tracts, with each tract containing at least 10 acres.

2

The initial sales campaign began by June 1972. Dubeau, a general manager of the project, was also at that time a principal in the Bud Hansen Agency, a real estate broker operation out of Billings, Montana. Through DuBeau's activities for the partnership, Bud Hansen Sales' representatives negotiated and closed sales with tract buyers. A sales office was opened in an existing ranch house on the partnership ranch land one-half mile from the Yellowstone River. Diagrammatic maps and aerial photographs were placed on the walls of the sales office and reduced for distribution to prospective buyers to aid in location of the tracts being offered for sale.

The subdivision was subjected to certain use restrictions defined by the declaration of covenants and restrictions, which together with the certificate of survey plat, were filed with the Clerk and Recorder of Stillwater County on July 7, 1972. The recorded plat and covenants were expressly referenced in all contracts for sale and warranty deeds for all purchasers of tracts at the Countryman Creek Ranch development, including the appellants. One of the first sales went to appellants C. Gene and Ardyce E. Endresen. On September 8, 1972, the Endresens received a warranty deed conveying Tract 88. In May 1973, appellant John R. Murray purchased Tract 62.

In the late 1970s, the Countryman Creek Ranch Homeowners Association (hereinafter "association") was formed. This was a nonprofit corporation formed to carry out operational activities for all tract owners. Platted Tract 142 was designated on the maps

3

as "recreation area" land and was immediately deeded by the partnership to the association and held in common for the association. The recreational land was to be managed for use of all tract owners by the association as "common area" pursuant to the declaration of covenants and restrictions as soon as sufficient tracts had been sold to activate the association. The partnership retained ownership of adjacent "ranch land" platted as Tract 143 along the river bottom, which the partnership continued to farm, and across which the association was granted an express right-of-way for traverse and for access along the bank of the Yellowstone River.

The original declaration of covenants was amended on two occasions. The first amendment to the declaration of covenants concerned changes with respect to grazing and was signed by appellants on April 9, 1979. The second amendment concerned a sale of some ranch buildings located on Tract 143. Apparently, this sale created some confusion between the association and the partnership because the land sold was originally intended to be a recreational complex for the subdivision. As a result, an agreement was reached between the partnership and the association. The land would be sold in exchange for it being bound by the declaration of covenants and for some adjacent property to be deeded over to the association for recreational purposes. This second amendment was intended to clear up any confusion as to what was common area land and what was ranch land. Appellants John R.

4

Murray and C. Gene Endresen signed the amended declaration of covenants on May 10, 1983.

Appellants believed that they had acquired certain recreational rights on or over the ranch land of the partnership similar to those enjoyed in the "common area." On November 14, 1980, they filed a complaint against the partnership with the Montana Realty Board. The Montana Realty Board cleared the partnership of any wrong doing.

In 1988, the partnership subdivided a river front "ranchette" from a portion of Tract 143 and sold it to Wayne Schile, a person who is not part of this action. Schile placed a fence around his "ranchette" and limited tract owners to a 50-foot river bank easement described in the declaration of covenants. This sparked a long-smoldering resentment of the appellants who, since 1980, had argued with the partnership over their understanding concerning the ranch land.

In 1989, appellants filed their claim in District Court. The case was originally scheduled as a jury trial. Prior to trial, the District Court bifurcated the cause and set the matter for hearing before the court, without a jury, on what were perceived to be equitable issues. Appellants Nevas' claim was severed from the other appellants because the Nevas had not purchased their property directly from respondents.

On May 2, 1991, the District Court entered its findings of fact and conclusions of law, finding that appellants did not have an "equitable" easement for common use and enjoyment of the lands

5

in question. The court held that no implied covenant of good faith and fair dealing existed, and with regard to a contract claim for recreational improvements, the court awarded appellants the return of ten percent of their purchase price of their lots. Appellants' appeal is limited to the easement question.

The only question we need to discuss is whether appellants' claim for an "equitable" easement through Tract 143 is barred by the equitable doctrine of laches.

Respondents contend that by at least 1980 there was not an easement of any nature or any other intangible undefined rights over partnership ranch land when the partnership changed its ownership maps to preclude any implication that the partnership ranch land was to be included as recreation or common area, and therefore, the doctrine of laches applies.

We have previously stated that:

> Laches exists where there has been an unexplainable delay of such duration or character as to render the enforcement of an asserted right inequitable, and is appropriate when a party is actually or presumptively aware of his rights but fails to act.

Larson v. Undem (1990), 246 Mont. 336, 340, 805 P.2d 1318, 1321.

The appropriate time to apply laches to a certain set of facts can be evaluated by an analogy to the equivalent statute of limitations:

> Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute, but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the analogous statute, a court

6

> of equity will not be bound by the statute, but will
> determine the extraordinary case in accordance with the
> equities which condition it. When a suit is brought
> within the time fixed by the analogous statute, the
> burden is on the defendant to show, either from the face
> of the complaint or by his answer, that extraordinary
> circumstances exist which require the application of the
> doctrine of laches. On the other hand, when the suit is
> brought after the statutory time has elapsed, the burden
> is on the complainant to aver and prove circumstances
> making it inequitable to apply laches to his case.

Brabender v. Kit Manufacturing Co. (1977), 174 Mont. 63, 68-69, 568 P.2d 547, 550 (quoting Shell v. Strong (10th Cir. 1945), 151 F.2d 909, 911).

In this instance, appellants stipulated that they had known of their rights prior to this action but did not enforce them. In 1980, the partnership changed its ownership maps to preclude any implication that the partnership ranch land was to be included as recreation or common area. The maps clearly distinguish between Tract 142 (common area) retained by the association and Tract 143 (ranch land) retained by the partnership. It was the recording of the common area deed to the association and the allocation of farm lease proceeds between the association and the partnership, based upon their respective ownerships, as well as the change in the maps to show the distinction, which gave rise to the 1980 complaint with the Montana Board of Realty.

These actions placed the appellants on notice since 1980 that there was not an easement of any nature or any other intangible undefined rights over partnership lands. Appellants admittedly knew of their rights for nine years and failed to exercise them. Without determining that an "equitable" easement exists, we hold

7

that appellants' claim for an "equitable" easement is barred by laches.

We affirm the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Chief Justice J. A. Turnage, specially concurring:

I concur with the result in this opinion. I would like to make it clear that the Court has not indicated that there is such a legal theory as "equitable easement."

Such a theory does not exist in Montana law and certainly should not be considered as possibly existing because of any statements in this opinion.

_____
Chief Justice

8

September 29, 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Bruce E. Lee
Attorney at Law
P.O. Box 1222
Billings, MT   59103

Robert Edd Lee
Crowley, Haughey, Hanson, Toole & Dietrich
P.O. Box 2529
Billings, MT   59103-2529

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy