No. 97-372

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 119


ROBERT D. URQUHART and EVELYN M. URQUHART, individually
and as Trustees of  the URQUHART REVOCABLE LIVING TRUST,

Plaintiffs, Counterdefendants, Appellants
and Cross-Respondents,

and

JOHN P. TALIA, JAMES A. COTE, BARBARA L. JUNE, a/k/a BARBARA
L. URQUHART, and SPRING CREEK INVESTMENTS, a Montana partnership,

Involuntary Plaintiffs, Counterdefendants
and Cross-Respondents,

v.

OTTO H. TELLER and THE CINNABAR FOUNDATION,
a Montana non-profit corporation,

Defendants, Counterclaimants, Respondents
and Cross-Appellants.


APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellants and Cross-Respondents:

William T. Wagner; Garlington, Lohn & Robinson, Missoula,
Montana
(for Appellants and Involuntary Plaintiffs Barbara L. June and
Spring Creek)

Gregory G. Schultz; Knight, Masar & Poore, Missoula,
Montana
(for Involuntary Plaintiffs John P. Talia and James A. Cote)

For Respondents:

Grant D. Parker; Parker Law Firm, Missoula, Montana


Submitted on Briefs: February 12, 1998
Decided:    May 6, 1998
Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.


Appellants Robert and Evelyn Urquhart (the Urquharts) appeal from the April 2, 1997 opinion and order of the Twenty-First Judicial District Court, Ravalli County, granting partial summary judgment in favor of Respondents Otto Teller (Teller) and The Cinnabar Foundation (Cinnabar) on the Urquharts' claim to enforce an option to purchase.  Teller and Cinnabar cross-appeal from the District Court's grant of partial summary judgment in favor of the Urquharts, the Urquhart Revocable Living Trust, and Involuntary Plaintiffs/Counter-defendants John Talia (Talia), James Cote (Cote), Barbara [Urquhart] June (June), and Spring Creek Investments on Teller and Cinnabar's counterclaim to enforce restrictive covenants.  We affirm.

The parties raise the following issues:

1. Did the District Court err in holding that the Urquharts may not exercise the preemptive right of first refusal contained in the Contract for Deed?

2. Did the District Court err in holding that the covenants contained in the Contract for Deed may not be enforced?

Factual and Procedural Background

Teller and his late wife, Elena Teller, were the owners of 280 acres of land in Ravalli County, Montana.  In May 1971, the Tellers entered into an agreement with the Urquharts to sell approximately 270 acres, reserving 10 acres to the Tellers (Contract for Deed).  The parties executed the agreement and deposited an unrestricted Warranty Deed in escrow.

The Contract for Deed contained the following provision:
IT IS SPECIFICALLY AGREED by and between the parties
hereto that should Sellers choose to dispose of said ten acre
tract, Buyers shall have the option to purchase said tract for the
sum of $10,000.00, and in addition thereto the sum of $2000.00
in the event there is added to the house on said premises a
bedroom and bath.  PROVIDED, HOWEVER, that this option
shall be non-assignable unless coupled with the assignment of
this contract and the sale of the said premises and this option as
a unit, and shall absolutely expire unless said option be
exercised by Buyers within six months of written notice by
Sellers that the property is to be disposed of.  On death of

> Sellers, Buyers shall have the right to exercise said option, but the time for payment thereof shall be extended to six months after notice is given hereunder by the personal representatives or heirs of Sellers. Death of Buyers, however, shall not terminate this option . . . .

Teller states that he intended to grant the Urquharts a temporary option during the term of the Contract for Deed to ensure that the property would not be divided should he or his wife die before the Contract for Deed was paid off. The Urquharts claim that Teller intended to grant them an option exercisable upon sale of the property or upon the death of the Tellers and that Teller was told by his attorney that the option would continue in full force after the Contract for Deed was paid off.

7    The Contract for Deed also contained restrictions on constructing improvements on or selling portions of the property, on committing waste, and on removing or destroying improvements on the property. The Contract for Deed stated that no covenant would be waived by the Tellers' choosing not to enforce it and that "[t]he covenants and conditions hereof run with the land and are binding upon the heirs, executors, administrators and assigns of the parties hereto." The Urquharts state that they were told these covenants were not permanent, but were intended to protect the Tellers in the event they defaulted on the Contract for Deed.

8    On January 9, 1979, the Urquharts contracted to sell 11.31 acres of the property to Raymond Bartram (Bartram). On January 17, 1979, the Urquharts paid off the Contract for Deed, and the unrestricted Warranty Deed was released from escrow and recorded. Teller did not object to the Urquharts' selling a portion of the property to Bartram. Bartram constructed substantial improvements on the property, and Teller never sought to enforce the restrictive covenants. Bartram subsequently conveyed his portion to Talia, and Talia conveyed an undivided one-half interest to Cote.

9    After paying off the Contract for Deed, the Urquharts built a home, machine shed, hay barn, and another house on the property. Although Teller was aware of the construction, he did not seek to enforce the covenant prohibiting improvements on the property. In 1982, the Urquharts conveyed all of their remaining interest in the 270 acres to the Urquhart Revocable Living Trust. The Urquhart Revocable Living Trust conveyed a portion of the property to June and a portion to Spring Creek Investments, a partnership comprised of June and her brother, Tom Urquhart. In the contract for sale with Spring Creek Investments, the Urquharts, as trustees of the Urquhart Revocable Living Trust, purported to assign the option, but agreed to exercise it on Spring Creek's behalf if it were deemed non-assignable.

10   The Urquharts claim that on several occasions since the Contract for Deed was satisfied, both Teller and his nephews have offered to buy portions of the Urquharts' property and have attempted to purchase the option. In July 1993, the Urquharts received a letter from Teller's attorney, which stated that Teller would not commence litigation for the Urquharts' violation of the covenants if they would agree to new covenants prohibiting the construction of more than one house on each portion of the property and if they would agree to release their option to purchase.

11  In the fall of 1993, Teller conveyed his 10-acre parcel to Cinnabar, a non-profit corporation dedicated to the conservation and protection of Montana's lands and waters, as a charitable gift. The value of the 10-acres plus improvements had increased to between $375,000 and $400,000. On August 23, 1994, the Urquharts, individually and as trustees of the Urquhart Revocable Living Trust, filed suit in the District Court seeking to enforce the option. Teller and Cinnabar counterclaimed to enforce the restrictive covenants contained in the Contract for Deed and joined Talia, Cote, June, and Spring Creek Investments as involuntary plaintiffs.

12  All parties filed motions and cross-motions for summary judgment. On March 31, 1997, the District Court entered its opinion and order granting partial summary judgment for Teller and Cinnabar on the Urquharts' claim to specifically enforce the option. The District Court held that the option, which it characterized as a preemptive right of first refusal, was limited to the duration of the Contract for Deed, constituted an unreasonable restraint on alienation, and violated the Rule against Perpetuities. The court also found that, considering the fair market value of the property, it would be inequitable to enforce the terms of the right of first refusal.

13   The District Court also granted partial summary judgment in favor of the Urquharts and involuntary plaintiffs on Teller and Cinnabar's counterclaims. The District Court held that the restrictive covenants did not run with the land because they were not contained in a grant of an estate in real property. The court also held that the statute of limitations barred their claims for violations of the covenants occurring more than eight years before filing of the action and that laches barred their claims for violations occurring within the statute of limitations. The parties appeal from this order.

### Standard of Review

14  We review a district court's grant of summary judgment de novo. Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. Therefore, pursuant to Rule 56, M.R.Civ.P., we review the record to determine whether material issues of fact exist and whether the movant is entitled to judgment as a matter of law. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

### Discussion

15  1. Did the District Court err in holding that the Urquharts may not exercise the preemptive right of first refusal contained in the Contract for Deed?

16  As noted by the District Court, the "option" provision is actually a preemptive right of first refusal, triggered only upon Teller's choosing to sell or transfer the 10-acre parcel or upon his death. The Urquharts argue that the right of first refusal was triggered when Teller transferred the property to Cinnabar and that the District Court erred in refusing to grant the Urquharts' request for specific performance. The District Court held that the right of first refusal was enforceable only during the period of the Contract for Deed, was

an unreasonable restraint on alienation, and violated the Rule against Perpetuities.  The court also held that granting the Urquharts specific performance would be inequitable.  We agree that the right of first refusal is an unreasonable restraint on alienation.  Because we determine that the right of first refusal is void, we need not reach the issues of its possible duration or of the equities of specific performance.

17   Under Montana law, a condition restraining alienation, when repugnant to the interest created, is void.  Section 70-1-405, MCA. This Court discussed the reasonableness of a restraint on alienation in Edgar v. Hunt (1985), 218 Mont. 30, 706 P.2d 120.  In that case, the Hunts sold real property to Omer and Alma Edgar.  Edgar, 706 P.2d at 121.  The parties agreed that the Hunts would have the first option to purchase the property for $7,000 on written notice from the Edgars of their intention to sell.  Edgar, 706 P.2d at 121.  After the death of her husband, Alma Edgar filed a quiet title action, seeking to invalidate the option agreement.  Edgar, 706 P.2d at 121.  The district court granted summary judgment for Edgar, holding that there was no consideration to support the option and that it was an unreasonable restraint on alienation. Edgar, 706 P.2d at 121.

18   This Court set forth the factors to be considered in determining whether a restraint is void under    70-1-405, MCA:

> The type of price set is important.  If the price is fixed and greatly disproportionate to the market value of the property, this supports a finding of unreasonableness.  Secondly, the intent of the parties contracting for the pre-emptive right is a factor.  If, from the circumstances, it appears that the particular restraint, or the price set thereby, is primarily for the purpose of restraining the alienability of the property, it will weigh heavily against the validity of the restraint.  On the other hand, if the circumstances suggest that the restraint was freely entered into by mutual consent as a normal incident of an equal bargaining relationship in order to promote the original transfer of the property, the scales will tip back towards the reasonableness of the restraint.   [Citations omitted.]

Edgar, 706 P.2d at 122.  The Edgar Court remanded to the district court to consider the option provision in light of these factors.  Edgar, 706 P.2d at 122.

19   In this case, the price set in the 1971 right of first refusal is fixed at $10,000 (or $12,000 in the event a house was erected on the property).  Some 23 years later, the market value of the 10-acre parcel and improvements thereon had increased to between $370,000 and $400,000.  Obviously, at nearly 35 times greater, the market value is grossly disproportionate to the option price.  Other courts considering the issue have found much smaller variances in option and market price to be unreasonable.  For example, a New Jersey court found that a $10,000 fixed option to purchase property valued at $40,000 was an unreasonable restraint.  Ross v. Ponemon (N.J. Super. 1970), 263 A.2d 195.  A Texas court held an option price of $79,955 to be unreasonable where the property value had risen to $550,000.  Procter v. Foxmeyer Drug Co. (Tex. App. 1994), 884 S.W.2d 853.

20 In determining the reasonableness of a restraint, we also consider whether the restraint was entered into by mutual consent as a normal incident of an equal bargaining relationship or whether the parties intended for it to restrain the alienation of the property. Edgar, 706 P.2d at 122. If the person imposing the restraint has some interest in land which he is seeking to protect by the enforcement of the restraint and if the enforcement of the restraint accomplishes a worthwhile purpose, the restraint is more likely to be reasonable. Edgar, 706 P.2d at 122 (citing Restatement of Property: Perpetuities and other Social Restrictions (1994) [hereinafter "Restatement of Property"] 406 cmt. i).

21 In this case, the evidence does not suggest that the Urquharts intended for the right of first refusal to restrain Teller from transferring his ten acres, but rather that the Urquharts sought to ensure they would be able to buy the acreage adjoining their own if they so desired. However, since the parties entered the agreement, the Urquharts have conveyed their entire interest in the property, and the property is now in the hands of several different owners, including the Urquhart Revocable Living Trust and involuntary plaintiffs. Thus, the Urquharts' legitimate purpose of obtaining ownership to neighboring property can no longer be served by enforcing the option. Enforcing the right of first refusal at this point would simply restrain Teller from transferring the property or give the Urquharts the bargain purchase of the century.

22 The Restatement's reasonableness factors also include whether the restraint is limited in duration, allows a substantial variety of types of transfers, or is limited as to the number of persons to whom transfer is prohibited. Restatement of Property 406. The Urquharts' right of first refusal states, in part:

> On death of Sellers, Buyers shall have the right to exercise said option, but the time for payment thereof shall be extended to six months after notice is given hereunder by the personal representatives or heirs of Sellers. Death of Buyers, however, shall not terminate this option . . . .

Thus, the right of first refusal affects the alienability of the property in all types of transfers to all transferees.

23 Further, the District Court found that the right was of potential perpetual duration and therefore violated the Rule against Perpetuities. The District Court concluded that, under the language of the right, if the personal representatives or heirs of Sellers failed to give Buyer notice of Seller's death, the six-month period would never be triggered and the right would go on in perpetuity. However, in interpreting similar option language, other courts have held that when death triggers the buyer's right, the representatives or heirs of the seller are required to give the buyer notice within a reasonable time of death. See, e.g., Smerchek v. Hamilton (Kan. App. 1980), 606 P.2d 491. The Rule against Perpetuities should not be applied when it is possible to give an instrument a construction which leads to its validity. Trust Created Under Will of Damon (Haw. 1994), 869 P.2d 1339; Matter of Estate of Crowl (Okla. 1987), 737 P.2d 911; Oliner v. City of Englewood (Colo. App. 1979), 593 P.2d 977. Therefore, we adopt the interpretation of the right of first refusal

that does not violate the rule and determine that the right of first refusal imposed an obligation on Teller's heirs or representatives to give the Urquharts notice of death within a reasonable time. However, that the restraint could be interpreted as existing in perpetuity further supports our holding that it is an unreasonable restraint on alienation.

24  Under the Restatement of Property, a restraint that tends to increase the value of the property or that is imposed on property that is not otherwise marketable is more reasonable. Restatement of Property  406. In this case, the right of first refusal fixes the price of the property, property that has appreciated in value to almost $400,000, at $10,000. Obviously, such a restraint decreases, rather than increases, the value of the property. Further, the property's market value and location in the Bitterroot Valley suggest that without the fixed price restraint, the property would be highly marketable.

25  We determine that the right of first refusal is an unreasonable restraint on alienation. The District Court correctly concluded that, under  70-1-405, MCA, the right is repugnant to Teller's interest and therefore void.

26  2. Did the District Court err in holding that the covenants contained in the Contract for Deed may not be enforced?

27  The Contract for Deed executed by the parties in 1971 contained covenants prohibiting the Urquharts from constructing improvements on or transferring portions of the property. The Warranty Deed, which was released from escrow when the Urquharts paid off the Contract for Deed in 1979, contained no restrictions or references to the Contract for Deed. Teller argues that the covenants contained in the Contract for Deed run with the land and that, despite his failure to enforce them in the past, he should be free to enforce them in the future.

28  It is a general tenet of contract law that all provision in a contract for sale of real property are merged into the deed. Davis v. Tazewell Place Associates (Va. 1997), 492 S.E.2d 162; U.S. v. Mojac Const. Corp. (E.D.N.Y. 1960), 190 F.Supp. 622; Colorado Land & Resources, Inc. v. Credithrift of America, Inc. (Colo. App. 1989), 778 P.2d 320. Thus, when a deed has been executed, the purchaser's rights are generally founded in the deed covenants, not the executed contract. Simpson v. Johnson (Idaho 1979), 597 P.2d 600. An exception to the general rule of merger occurs when the parties intended for an agreement in a contract for sale to be collateral. Baxter v. Stubbs (Utah 1980), 620 P.2d 68. Covenants relating to title, quantity, and possession of land are generally not collateral and merge into the deed. Lazy Dog Ranch v. Telluray Ranch Corp. (Colo. App. 1996), 923 P.2d 313. In this case, we hold that Teller and the Urquharts did not intend for the covenants to be collateral agreements and that they merged with and were extinguished by the unrestricted Warranty Deed.

29  Teller and Cinnabar argue that the covenants should be enforced because the Contract for Deed specifically states that they run with the land and because they were properly recorded when the Contract for Deed was

filed. They state that this Court has held that restrictive covenants do not need to be contained in a deed granting title to the property and cite Kosel v. Stone (1965), 146 Mont. 218, 404 P.2d 894, for the proposition that restrictive covenants filed in the clerk and recorder's office bind a subsequent purchaser, regardless of whether that purchaser had knowledge of the restrictions.

30 We find Kosel readily distinguishable. In that case, the developer had filed a subdivision plat and declaration of restrictions in the clerk and recorder's office. Kosel, 404 P.2d at 895. The developer originally conveyed the lots by deeds which referenced the restrictions; however, when the Stones purchased their lot, the deed from the seller did not mention the restrictions, and the Stones claimed that they were unaware that the declarations existed. Kosel, 404 P.2d at 895. This Court affirmed the district court in holding that the declaration of restrictions ran with the land. Kosel, 404 P.2d at 896. We noted that the restrictions were recorded prior to the Stones' purchasing their lot and that the Stones' deed described the property as being located in the subdivision according to the official plat on file. Kosel, 404 P.2d at 897. Thus, we determined that the Stones had constructive notice of the official plat and declaration of restrictions and that they became part of the Stones' deed. Kosel, 404 P.2d at 897.

31 In Kosel, the declaration of restrictions was not contained in a contract for sale between the same parties who executed the deed, but rather was a separate document filed by the original developer. The facts in Kosel did not necessitate application of the doctrine of merger, which only applies where a buyer and seller enter into a contract for the sale of real property and subsequently execute a deed conveying title to the real property.

32 We agree with Teller and Cinnabar that a contract for sale of property can contain a valid covenant running with the land. However, we determine that the evidence in this case suggests that Teller and the Urquharts intended for the Contract for Deed, and the restrictions set forth therein, to merge into the Warranty Deed. Teller and the Urquharts executed the Contract for Deed and the Warranty Deed at the same time and intended for the Warranty Deed to be recorded upon the Urquharts' performance of the contract. The parties did not record the Contract for Deed at the time it was executed. In fact, it was not recorded until the following year when the Urquharts recorded it as part of an unrelated real estate transaction. The Warranty Deed makes no reference to restrictive covenants, and no separate declaration of covenants was ever filed. The notice of purchaser's interest recorded by the Urquharts and Teller at closing makes no reference to any property restrictions. Further, the remedies for breach provided in the Contract for Deed were exclusive to the contracting parties and did not extend to heirs or assigns.

33 Therefore, we apply the general rule of merger and hold that the District Court did not err in refusing to enforce the covenants contained in the Contract for Deed or in refusing to hold that they may be enforced in the future.

34 Based on the foregoing, we affirm the decision of the District Court.

                    /S/   W. WILLIAM LEAPHART


We concur:

/S/   JIM REGNIER
/S/   JAMES C. NELSON
/S/   KARLA M. GRAY


Justice Terry N. Trieweiler specially concurring in part and dissenting in part.
 35  I concur with the majority's conclusion that the preemptive right of first refusal claimed by the plaintiffs is void as an unreasonable restraint on alienation.  I dissent from that part of the majority opinion which holds that the restrictive covenants agreed upon by the Tellers and Urquharts as partial consideration for the transfer of real estate among them are unenforceable.
 36  The real estate contract executed by the parties included the following relevant provisions:

    IT IS SPECIFICALLY AGREED by the parties hereto that there shall
    be no construction on the property except by mutual written agreement
    between the parties.  But it is agreed that a 2-car garage with reasonable shop
    facilities may be erected near the pump house which shall be of the same
    quality and style as the pump house.

        . . . .

    BUYERS SPECIFICALLY AGREE that they will not sell or contract
    to sell portions of the above described property, although nothing in this
    paragraph contained shall prevent the assignment of this contract or the sale
    of said premises as a unit.

        . . . .

    . . . [T]he failure of sellers to insist in any one instance or more upon
    the performance of any of the covenants or conditions of this contract or of
    exercising any right or privilege herein contained, shall not be construed as
    thereafter waiving any such covenants, conditions, rights, or privileges, but
the
    same shall continue and remain in full force and effect, and it is expressly
    agreed that there are no promises, agreements or understanding or
    representations of any kind other than those contained in this written
    agreement, and that no agent has or had any authority to obligate the sellers by
    any promises, stipulations or conditions not herein expressed.

    The covenants and conditions hereof run with the land and are binding
    upon the heirs, executors, administrators and assigns of the parties hereto.

    37  The majority holds, without explaining the basis for its conclusion, that the parties did
not intend the restrictive covenants to be a collateral agreement and, therefore, that the
contract for deed merged with the unrestricted warranty deed.  The majority does exactly

what the very terms of the contract prohibit when it assumes that the parties intended something other than indicated by the plain language of their agreement. The plain language of the parties' agreement provides for restrictions which "run with the land and are binding upon the heirs, executors, and assigns of the parties hereto."

A covenant running with the land is one so relating to the land, that its benefit or obligation passes with the ownership irrespective of the consent of subsequent parties.

In order for a covenant to run with the land, the grantor and grantee must intend that the covenant run with the land, that the covenant touch and concern the land, and that there be privity of estate between the original parties to the covenant, the original parties and the present disputants, or between the party claiming the benefit of the covenant and the party who rests under the burden.

In addition, the covenant must be in writing, must have been enforceable between the original parties, and the successor to the burden must have notice.

Where the intention of the parties is the determining factor, such intent will be ascertained from the facts, as appear from the grant itself and the surrounding circumstances.

21 C.J.S. Covenants 25 (1990).

38 Section 70-17-201, MCA, establishes as a matter of statutory law that certain covenants run with the land in Montana. It provides:

Certain covenants contained in grants of estates in real property are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee in the same manner as if they had personally entered into them. Such covenants are said to run with the land.

39 Section 70-17-203(1), MCA, explains which covenants run with the land in Montana. It provides that "[e]very covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property or some part of it then in existence, runs with the land."

40 In this case, the contract for deed executed by Tellers and Urquharts, when filed with the Clerk and Recorder in Ravalli County, satisfied all of the necessary prerequisites to bind the land conveyed by Tellers and to provide notice to subsequent purchasers.

41 Furthermore, this Court has not had difficulty in the past with the argument that a subsequent warranty deed which includes no restrictions on the use of land supersedes an

earlier agreement which placed restrictions on the use of that same land. In Kosel v. Stone (1965), 146 Mont. 218, 404 P.2d 894, the owners of land near Billings, prior to the sale of that land, entered into an agreement with the seller entitled "declaration of restrictions" which provided that no lot in what was about to be a subdivision could be used for other than residential purposes. That declaration was filed in the clerk and recorder's office. The lots were subsequently conveyed by a deed which made no reference to the declaration of restrictions. The property was later conveyed to Stone by deed which made no mention of building or use restrictions. When neighbors eventually learned that Stone wanted to put a filling station on his property, they brought suit to have the "declaration of restrictions" enforced. The district court did so. On appeal, Stone contended that the only covenants which run with the land are those contained in a grant of real estate, and that the agreement between the parties which placed restrictions on the use of his land was not a grant of real estate. While not specifically referring to principles of merger, this Court held on appeal that because the declaration of restrictions affected the title to the real estate it was, in effect, a conveyance and that, furthermore, because the document was filed with the clerk and recorder of Yellowstone County, it was as much a part of the deed as if fully incorporated therein by its terms. This Court stated:

> Under our recording statutes these instruments [including the declaration of restrictions] constituted constructive notice of their contents to subsequent purchasers. Section 73-201, R.C.M. 1947. Since defendants' deed described the property as being located in the subdivision according to the official plat on file, the official plat becomes as much a part of the deed as if fully incorporated therein, and the same situation applies to the declaration of restrictions. See 16 Am.Jur. Deeds, Sec. 273, p. 592.
>
> . . . .
>
> ". . . [T]he term conveyance as used in section 1213 of said Code embraces every instrument in writing by which an estate in real property is created, aliened, mortgaged, or encumbered or by which the title to any real property may be affected, except wills. This definition of 'a conveyance of real property' is sufficiently comprehensive to include the agreement which is the basis of the present controversy." Wayt v. Patee, 205 Cal. 46, 53, 269 P. 660, 663 [emphasis in original].
>
> Our own court has defined the word "conveyance," as used in sections

73-201 and 73-203 to include . . . a contract for sale of land, Piccolo v. Tanaka, 78 Mont. 445, 451, 253 P. 890 . . . .

Kosel, 146 Mont. at 222-23, 404 P.2d at 896-97 (emphasis added).

42  Likewise, the contract for deed executed by Tellers and Urquharts was a conveyance of an interest in land which included restrictions on Urquharts' use of the land conveyed. That contract, including those restrictions, was filed with the clerk and recorder in Ravalli County, thereby placing all of the public, including subsequent purchasers, on constructive notice of its terms, and they are as binding as if included in the warranty deed which was subsequently filed.

43  There is simply no basis for the majority to conclude that the Tellers and Urquharts intended that the contract for deed merge with the warranty deed.  The best and only necessary evidence of the parties' intention is the plain language of their contract for deed which provides that the restrictions therein on Urquharts' use of the land run with the land and are binding on Urquharts' successors.  Where the language of the contract is clear, the court has no authority to contradict those terms by assuming that the parties intended something else.  See Carbon County v. Dain Bosworth, Inc. (1994), 265 Mont. 75, 87, 874 P.2d 718, 726; First Security Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 153, 818 P.2d 384, 387.  Furthermore, had the parties chosen to do what the majority has, in effect, done for them, they could have stated, as Urquharts did in subsequent conveyances, that restrictions on use of the property being conveyed are limited to the term of the contract for deed.  The fact that they included such a provision in subsequent contracts by which they conveyed parts of the land in question makes clear that the parties to this contract understood the significance when they stated a contrary intention.

44  The fact that the remedies provided for breach in the contract for deed were exclusive to the contracting parties is of no significance.  The remedies provided for breach in the contract (termination of the contract and forfeiture of rights) do not include all of the remedies available for breach of a contract, and there is nothing in the contract which would preclude enforcement of other remedies, such as injunctive relief or damages for or against either of the parties' successors in interest.

45  I do agree with the District Court that principles of laches bar enforcement of the land use restrictions against those persons who violated them prior to the date on which Tellers' counterclaim was filed.

> Laches exists where there has been an unexplainable delay of such duration or character as to render the enforcement of an asserted right inequitable, and is appropriate when a party is actually or presumptively aware of his rights but fails to act.

> Murray v. Countryman Creek Ranch (1992), 254 Mont. 432, 435-36, 838 P.2d 431, 433.

46  However, I do not believe the doctrine of laches, nor the notice provision in the enforcement part of the contract for deed, preclude future enforcement of the contract's terms and prevention of future violations.  This is so because of the specific nonwaiver provision in the agreement.

47  For these reasons, I dissent from that part of the majority opinion which holds that those restrictions in the contract for deed which limit the use of the land conveyed to Urquharts are unenforceable.  I would reverse that part of the District Court judgment; however, I would limit enforcement to future violations.

48  I otherwise concur with the majority opinion.

/S/  TERRY N. TRIEWEILER