JUSTICE TRIEWEILER
specially concurring in part and dissenting in part.
¶35 I concur with the majority’s conclusion that the preemptive right of first refusal claimed by the plaintiffs is void as an unreasonable restraint on alienation. I dissent from that part of the majority opinion which holds that the restrictive covenants agreed upon by the Tellers and Urquharts as partial consideration for the transfer of real estate among them are unenforceable.
¶36 The real estate contract executed by the parties included the following relevant provisions:
IT IS SPECIFICALLY AGREED by the parties hereto that there shall be no construction on the property except by mutual written agreement between the parties. But it is agreed that a 2-car garage with reasonable shop facilities may be erected near the pump house which shall be of the same quality and style as the pump house.
BUYERS SPECIFICALLY AGREE that they will not sell or contract to sell portions of the above described property, although *509 nothing in this paragraph contained shall prevent the assignment of this contract or the sale of said premises as a unit.
... [T]he failure of sellers to insist in any one instance or more upon the performance of any of the covenants or conditions of this contract or of exercising any right or privilege herein contained, shall not be construed as thereafter waiving any such covenants, conditions, rights, or privileges, but the same shall continue and remain in full force and effect, and it is expressly agreed that there are no promises, agreements or understanding or representations of any kind other than those contained in this written agreement, and that no agent has or had any authority to obligate the sellers by any promises, stipulations or conditions not herein expressed.
The covenants and conditions hereof run with the land and are binding upon the heirs, executors, administrators and assigns of the parties hereto.
¶37 The majority holds, without explaining the basis for its conclusion, that the parties did not intend the restrictive covenants to be a collateral agreement and, therefore, that the contract for deed merged with the unrestricted warranty deed. The majority does exactly what the very terms of the contract prohibit when it assumes that the parties intended something other than indicated by the plain language of their agreement. The plain language of the parties’ agreement provides for restrictions which “run with the land and are binding upon the heirs, executors, and assigns of the parties hereto.”
A covenant running with the land is one so relating to the land, that its benefit or obligation passes with the ownership irrespective of the consent of subsequent parties.
In order for a covenant to run with the land, the grantor and grantee must intend that the covenant run with the land, that the covenant touch and concern the land, and that there be privity of estate between the original parties to the covenant, the original parties and the present disputants, or between the party claiming the benefit of the covenant and the party who rests under the burden.
In addition, the covenant must be in writing, must have been enforceable between the original parties, and the successor to the burden must have notice.
Where the intention of the parties is the determining factor, such intent will be ascertained from the facts, as appear from the grant itself and the surrounding circumstances.
*510 21 C.J.S. Covenants § 25 (1990).
¶38 Section 70-17-201, MCA, establishes as a matter of statutory law that certain covenants run with the land in Montana. It provides:
Certain covenants contained in grants of estates in real property are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee in the same manner as if they had personally entered into them. Such covenants are said to run with the land.
¶39 Section 70-17-203(1), MCA, explains which covenants run with the land in Montana. It provides that “[e]very covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property or some part of it then in existence, runs with the land.”
¶40 In this case, the contract for deed executed by Tellers and Urquharts, when filed with the Clerk and Recorder in Ravalli County, satisfied all of the necessary prerequisites to bind the land conveyed by Tellers and to provide notice to subsequent purchasers.
¶41 Furthermore, this Court has not had difficulty in the past with the argument that a subsequent warranty deed which includes no restrictions on the use of land supersedes an earlier agreement which placed restrictions on the use of that same land. In Kosel v. Stone (1965), 146 Mont. 218, 404 P.2d 894, the owners of land near Billings, prior to the sale of that land, entered into an agreement with the seller entitled “declaration of restrictions” which provided that no lot in what was about to be a subdivision could be used for other than residential purposes. That declaration was filed in the clerk and recorder’s office. The lots were subsequently conveyed by a deed which made no reference to the declaration of restrictions. The property was later conveyed to Stone by deed which made no mention of building or use restrictions. When neighbors eventually learned that Stone wanted to put a filling station on his property, they brought suit to have the “declaration of restrictions” enforced. The district court did so. On appeal, Stone contended that the only covenants which run with the land are those contained in a grant of real estate, and that the agreement between the parties which placed restrictions on the use of his land was not a grant of real estate. While not specifically referring to principles of merger, this Court held on appeal that because the declaration of restrictions affected the title to the real estate it was, in effect, a conveyance and that, furthermore, because the document was filed with the clerk and recorder of *511 Yellowstone County, it was as much a part of the deed as if folly incorporated therein by its terms. This Court stated:
Under our recording statutes these instruments [including the declaration of restrictions] constituted constructive notice of their contents to subsequent purchasers. Section 73-201, R.C.M. 1947. Since defendants’ deed described the property as being located in the subdivision according to the official plat on file, the official plat becomes as much a part of the deed as if folly incorporated therein, and the same situation applies to the declaration of restrictions. See 16 Am. Jur. Deeds, Sec. 273, p. 592.
"... [T]he term conveyance as used in section 1213 of said Code embraces every instrument in writing by which an estate in real property is created, aliened, mortgaged, or encumbered or by which the title to any real property may be affected, except wills. This definition of ‘a conveyance of real property’ is sufficiently comprehensive to include the agreement which is the basis of the present controversy.” Wayt v. Patee, 205 Cal. 46, 53, 269 P. 660, 663 [emphasis in original].
Our own court has defined the word “conveyance,” as used in sections 73-201 and 73-203 to include ... a contract for sale of land, Piccolo v. Tanaka, 78 Mont. 445, 451, 253 P. 890 ....
Kosel, 146 Mont. at 222-23, 404 P.2d at 896-97 (emphasis added).
¶42 Likewise, the contract for deed executed by Tellers and Urquharts was a conveyance of an interest in land which included restrictions on Urquharts’ use of the land conveyed. That contract, including those restrictions, was filed with the clerk and recorder in Ravalli County, thereby placing all of the public, including subsequent purchasers, on constructive notice of its terms, and they are as binding as if included in the warranty deed which was subsequently filed.
¶43 There is simply no basis for the majority to conclude that the Tellers and Urquharts intended that the contract for deed merge with the warranty deed. The best and only necessary evidence of the parties’ intention is the plain language of their contract for deed which provides that the restrictions therein on Urquharts’ use of the land run with the land and are binding on Urquharts’ successors. Where the language of the contract is clear, the court has no authority to contradict those terms by assuming that the parties intended something else. See Carbon County v. Dain Bosworth, Inc. (1994), 265 *512 Mont. 75, 87, 874 P.2d 718, 726; First Security Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 153, 818 P.2d 384, 387. Furthermore, had the parties chosen to do what the majority has, in effect, done for them, they could have stated, as Urquharts did in subsequent conveyances, that restrictions on use of the property being conveyed are limited to the term of the contract for deed. The fact that they included such a provision in subsequent contracts by which they conveyed parts of the land in question makes clear that the parties to this contract understood the significance when they stated a contrary intention.
¶44 The fact that the remedies provided for breach in the contract for deed were exclusive to the contracting parties is of no significance. The remedies provided for breach in the contract (termination of the contract and forfeiture of rights) do not include all of the remedies available for breach of a contract, and there is nothing in the contract which would preclude enforcement of other remedies, such as injunctive relief or damages for or against either of the parties’ successors in interest.
¶45 I do agree with the District Court that principles of laches bar enforcement of the land use restrictions against those persons who violated them prior to the date on which Tellers’ counterclaim was filed.
Laches exists where there has been an unexplainable delay of such duration or character as to render the enforcement of an asserted right inequitable, and is appropriate when a party is actually or presumptively aware of his rights but fails to act.
Murray v. Countryman Creek Ranch (1992), 254 Mont. 432, 435-36, 838 P.2d 431, 433.
¶46 However, I do not believe the doctrine of laches, nor the notice provision in the enforcement part of the contract for deed, preclude future enforcement of the contract’s terms and prevention of future violations. This is so because of the specific nonwaiver provision in the agreement.
¶47 For these reasons, I dissent from that part of the majority opinion which holds that those restrictions in the contract for deed which limit the use of the land conveyed to Urquharts are unenforceable. I would reverse that part of the District Court judgment; however, I would limit enforcement to future violations.
¶48 I otherwise concur with the majority opinion.