FILED

May 5 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0459

DA 14-0459

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 122N

HERB RICHARDS and RICHARDS
DEVELOPMENT COMPANY,

        Plaintiffs and Appellants,

   v.

STATE OF MONTANA, DEPARTMENT
OF TRANSPORTATION,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-13-840
Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

           Dennis E. Lind, Kyle C. Ryan, Datsopoulos, MacDonald & Lind, P.C.;
           Missoula, Montana

       For Appellee:

           Jolyn E. Eggart, Valerie D. Wilson, Special Assistant Attorneys General,
           Montana Department of Transportation; Missoula, Montana

Submitted on Briefs:  February 18, 2015
Decided:  May 5, 2015

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by unpublished opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Herb Richards and Richards Development Company (RDC) appeal the order and judgment of the Fourth Judicial District Court, Missoula County, which granted summary judgment in favor of the State of Montana Department of Transportation (DOT). We affirm.

¶3    Herb and Lola Richards owned Lots 1, 6, 7, 8, 8A, 9, and an "Excess Tract"[1] of the Drew Creek Addition, Phase VII of the Double Arrow Ranch Subdivision, Missoula County. Herb and Lola own and operate a commercial gravel pit on Lots 8, 8A, 9 and part of Lot 7. In 1993, Herb and Lola entered into a Right-of-Way Agreement (1993 Agreement) with DOT, in which they sold Lots 1, 6, 7, and the Excess Tract to DOT for $40,450. The 1993 Agreement contained the following sections pertinent to this appeal:

> 16.    Subject to the approval of the appropriate governing body, [B]uyer agrees to grant an easement to the Seller for ingress and egress to and across the furthest south portion of Lot 7 for access to Lot 9. The width of the easement is negotiable but may not exceed 60 feet. It is the Seller's responsibility to initiate the establishment of the easement within a reasonable period of time.

---

[1] The "Excess Tract" is a 1.42 acre parcel adjacent to Lots 1 and 6, located in the Southeast 1/4, Northwest 1/4 and the Southwest 1/4 Northeast 1/4 of Section 14, Township 16 North, Range 15 West, P.M.M.

2

17. Seller and [B]uyer agree to enter into a lease for a stockpile site, for the use [of] the [S]eller, on Lot 7, the term and price to be negotiated at a later date. Buyer further agrees to provide access to [S]eller to Lot 7 during the term of the above mentioned lease.

¶4 Herb and Lola conveyed Lots 8, 8A, and 9 to RDC on November 1, 1994. On July 1, 1997, RDC and DOT entered into a ten-year lease agreement—which was backdated to commence July 1, 1995—that allowed RDC to store gravel on a southeast portion of Lot 7. On January 7, 1998, DOT granted RDC an easement across Lot 7 for access to Lot 9, providing direct access to Montana Highway 83 from Lot 9. In July 2000, DOT sent RDC a letter explaining that DOT intended to close access to Lot 7 through Lots 1 and 6, but that DOT would honor the existing leases that provided RDC with "adequate direct access to Highway # 93 [sic]." However, in 2001, RDC and DOT entered into an agreement to extend the 1997 lease until June 30, 2010.

¶5 On October 7, 2009, DOT sent Herb a letter advising that they did not intend to extend RDC's existing lease beyond June 30, 2010. However, on July 1, 2010, DOT and RDC entered into a new one-year lease that provided for use of 1.07 acres of the northern portion of Lot 7, and a separate ten-year lease that provided for use of 1.08 acres in the southern portion of Lot 7.

¶6 In 2009, RDC learned that Missoula County (the County) was interested in leasing land from DOT in order to stockpile gravel. DOT, the County, and RDC met to discuss the leases, and RDC explained that the leases planned between the County and DOT would not allow RDC to operate its gravel pit. The County agreed to lease a smaller portion of Lot 7 and a small portion of Lot 6, and on August 1, 2012, DOT entered into a

lease agreement with the County for .85 acres adjacent to the land leased by RDC. On December 13, 2012, DOT signed an addendum to the 2010 ten-year lease granting RDC use of an additional .28 acres. DOT then constructed a fence between the land leased by the County and the land leased by RDC.

¶7 On July 17, 2013, Herb, on behalf of Herb Richards Construction Company (HRCC), sent DOT a Notice of Claim asserting that DOT breached the 1993 Agreement that provided for access to RDC's gravel pit operations by constructing the fence between the lands leased by the County and the lands leased by RDC. HRCC claimed that access to the pit was required to complete a May 2013 contract for sanding materials between DOT and HRCC. On October 2, 2013, DOT and HRCC entered into a Memorandum of Understanding granting HRCC a temporary license to use a portion of Lot 7 that was leased by the County in order to deliver materials to fulfill the sanding materials contract. HRCC completed the sanding materials contract on November 8, 2013, and the temporary license terminated on November 15, 2013.

¶8 On July 31, 2013, RDC (and Herb individually) filed a complaint in District Court claiming that the 1993 Agreement requires DOT to provide RDC access to its gravel pit operations, and the fence constructed on Lot 7 between RDC's and the County's leased lands now precludes such access. RDC sought rescission of the 1993 Agreement, and claimed that RDC had both an easement by necessity and a prescriptive easement on Lot 7. RDC and DOT filed cross motions for summary judgment. On June 13, 2014, the District Court granted summary judgment to DOT. The District Court held that DOT complied with every section of the 1993 Agreement by granting RDC an easement to

4

access its gravel pit operations and use of Lot 7 for storage of gravel. Herb and RDC appeal.

¶9 We review a district court's grant of summary judgment de novo. Pursuant to M. R. Civ. P. 56, we review the record to determine whether material issues of fact exist and whether the moving party is entitled to judgment as a matter of law. *Urquhart v. Teller*, 1998 MT 119, ¶ 14, 288 Mont. 497, 958 P.2d 714. Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *Richman v. Gehring Ranch Corp.*, 2001 MT 293, ¶ 14, 307 Mont. 443, 37 P.3d 732.

¶10 RDC argues that DOT breached sections 16 and 17 of the 1993 Agreement, contending that DOT was required to allow RDC access to Lot 7 for the continued operation of the commercial gravel pit. RDC argues that a contract may be rescinded if such consideration fails in whole or in part. Section 28-2-1711(2), MCA. Alternatively, RDC argues that section 17 is an enforceable independent agreement. RDC's arguments are unavailing.

¶11 DOT fulfilled the terms of the 1993 Agreement, including sections 16 and 17. Section 16 required DOT "to grant an easement to [RDC] for ingress and egress to and across the furthest south portion of Lot 7 for access to Lot 9" and provided that it was "[RDC]'s responsibility to initiate the establishment of the easement within a reasonable period of time." Section 17 provided that DOT and RDC agreed "to enter into a lease for a stockpile site" for RDC's gravel on Lot 7. Section 17 further provided that the term and price of the lease would be negotiated at a later date and that DOT agreed to provide

5

RDC access to Lot 7 "during the term of the above mentioned lease." This is precisely what occurred.

¶12 DOT paid the consideration due under the 1993 Agreement, and DOT complied with sections 16 and 17 by providing an easement on Lot 7 in 1998 and leases to portions of Lot 7 in 1997, 2001, and again in 2010 (amended in 2012). Nothing in the 1993 Agreement suggests that DOT was required to allow RDC indefinite lease rights or easements. The District Court did not err by granting summary judgment in favor of DOT.

¶13 RDC argues that the court should have considered parol evidence to interpret sections 16 and 17 because they are ambiguous. Specifically, RDC contends that a DOT employee represented to Herb Richards that the lease could be renewed in perpetuity. There is no ambiguity that would allow the court to consider such parol evidence. The 1993 Agreement as it pertained to access and easements specifically provided that it was to be "during the term of the . . . lease." The parol evidence that RDC would have the court consider—an alleged representation that the lease could be renewed in perpetuity— runs directly contrary to this unambiguous term which provided for access during a fixed term. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible." Section 28-3-303, MCA.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for unpublished opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear

6

application of applicable standards of review. The District Court's interpretation and application of the law were correct.

¶15   Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE