No. 97-485

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 179

PENNY HADFORD,

Plaintiff and Appellant,

v.

CREDIT BUREAU OF HAVRE, INC.,

and JOHN DOES I-IV,

Defendants and Respondents.

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Hill,

The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ward E. Taleff; Alexander, Baucus, Taleff & Paul, Great Falls, Montana

For Respondents:

Bruce E. Swenson; Barron & Swenson, Havre, Montana

Submitted on Briefs: March 12, 1998

Decided: July 20, 1998

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1 Penny Hadford (Hadford) appeals from the judgment entered by the Twelfth Judicial District Court, Hill County, on its order granting the summary judgment motion of Credit Bureau of Havre, Inc. (Credit Bureau) and denying her motion to further amend her complaint. We affirm.**

**¶2 We restate the issues on appeal as follows:**

**¶3 1. Did the District Court err in granting summary judgment to the Credit Bureau based on its conclusion that the Credit Bureau did not receive sufficient notice of the wrongful discharge action against Big Sky Billing Service, Inc.?**

**¶4 2. Did the District Court abuse its discretion in denying Hadford's motion to further amend her complaint to substitute Teddy Reber as a named defendant?**

*BACKGROUND*

**¶5 Hadford filed a complaint against Big Sky Billing Service, Inc. (Big Sky) in 1994,**

alleging wrongful discharge and failure to pay overtime compensation (the wrongful discharge action). Hadford served the summons and complaint on Teddy Reber (Reber), president of Big Sky, who acknowledged service on Big Sky's behalf as its registered agent. Reber owned 50% of the common stock of Big Sky and was one of its two directors. The other director, Constance Reber, owned the remaining 50% of Big Sky's common stock. Neither director was named or served in the wrongful discharge action.

¶6 Hadford discovered that Big Sky had no assets, but she continued to pursue the wrongful discharge action and obtained a default judgment against Big Sky in May of 1995. In an attempt to collect the default judgment, Hadford filed a complaint against the Credit Bureau and John Does I through IV in September of 1995. She alleged that she had obtained a default judgment against Big Sky; that the John Does were persons who "participated in the actions referred to herein" or the last designated directors of Big Sky; that Big Sky had been dissolved to avoid paying Hadford's claims; that the dissolution involved fraudulent conveyance, deceit, and constructive fraud; and that Big Sky was the alter ego of the Credit Bureau, which was liable for the default judgment obtained against Big Sky. She requested a judgment requiring the Credit Bureau and the John Does to pay the amount specified in her default judgment against Big Sky. A summons was issued and served on the Credit Bureau but no summonses were issued for the John Does.

¶7 The Credit Bureau moved to dismiss Hadford's complaint for failure to state a claim on which relief could be granted. The District Court denied the motion and the Credit Bureau filed its answer.

¶8 Hadford subsequently amended her complaint to expand the allegations regarding the alter ego status of the Credit Bureau, the John Does, and Big Sky. She alleged that, as alter egos of Big Sky, the Credit Bureau and the John Does had actual or constructive notice that they were in jeopardy of personal liability in her wrongful discharge action and a fair opportunity to defend themselves in that action. The Credit Bureau moved to dismiss the amended complaint and the District Court again denied the motion.

¶9 The Credit Bureau then petitioned for a writ of supervisory control, requesting this Court to vacate the order denying its motion to dismiss and to direct the District Court to dismiss the amended complaint with prejudice. We denied the petition on

**June 25, 1996.**

**¶10 The Credit Bureau having answered the amended complaint during the pendency of proceedings in this Court, the District Court set an April 22, 1997, trial date. The Credit Bureau moved for summary judgment in March of 1997, arguing that it had insufficient notice of the wrongful discharge action to be held personally liable on the amount of the default judgment therein and that it was not the alter ego of Big Sky. In a supporting affidavit, Reber stated that the corporate activities of Big Sky and the Credit Bureau were kept separate and that all corporate formalities were followed. The Credit Bureau also submitted minutes from the annual shareholders' meetings of both corporations and other documents indicating that Reber was the sole shareholder and a director of the Credit Bureau. Hadford opposed the Credit Bureau's motion and moved to further amend her complaint to substitute Reber for John Doe I and to continue the trial.**

**¶11 The trial date was vacated and, after a hearing on both parties' motions, the District Court granted the Credit Bureau's motion for summary judgment and denied Hadford's motion to further amend her amended complaint. Judgment was entered accordingly and Hadford appeals from both the grant of summary judgment to the Credit Bureau and the denial of her motion to amend.**

## *DISCUSSION*

**¶12** 1. Did the District Court err in granting summary judgment to the Credit Bureau based on its conclusion that the Credit Bureau did not receive sufficient notice of the wrongful discharge action against Big Sky?

**¶13 The District Court determined that, because the Credit Bureau had not received sufficient notice of--and an opportunity to defend against--Hadford's wrongful discharge action, no genuine issues of material fact existed regarding whether the Credit Bureau could be held liable for the default judgment therein. The District Court also determined that the notice issue was dispositive without regard to whether the Credit Bureau was the alter ego of Big Sky and, as a result, it did not reach the alter ego issue.**

**¶14 We review a district court's ruling on a motion for summary judgment *de novo,* applying the same Rule 56(c), M.R.Civ.P., criteria applied by the district court.**

Montana Metal Buildings, Inc. v. Shapiro (1997), 283 Mont. 471, 474, 942 P.2d 694, 696 (citation omitted). The moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Montana Metal Buildings*, 283 Mont. at 474, 942 P.2d at 696 (citation omitted). Once the moving party has met its burden, the party opposing summary judgment must present evidence raising a genuine issue of material fact. *Montana Metal Buildings*, 283 Mont. at 474, 942 P.2d at 696 (citation omitted). The evidence must be substantial, "not mere denial, speculation, or conclusory statements." Klock v. Town of Cascade (1997), 284 Mont. 167, 174, 943 P.2d 1262, 1266 (citation omitted).

¶15 In this case, the District Court's order granting summary judgment is based on its conclusion that, because the Credit Bureau did not receive sufficient notice of the wrongful discharge action, the Credit Bureau cannot be held liable on the default judgment. We review a district court's conclusions of law to determine whether they are correct. Ash Grove Cement Co. v. Jefferson County (1997), 283 Mont. 486, 491-92, 943 P.2d 85, 89 (citation omitted).

¶16 Rule 4D, M.R.Civ.P., governs service of process on both individuals and corporations. "The purpose of serving a summons is to give notice to the defendant and thereby afford him the opportunity to defend himself or his property--an essential to due process of law." Haggerty v. Sherburne Mercantile Co. (1947), 120 Mont. 386, 396-97, 186 P.2d 884, 891. Service of process also provides the court with jurisdiction over the person or entity sued. In re Marriage of Grounds (1995), 271 Mont. 350, 352, 897 P.2d 200, 201 (citation omitted). Actual knowledge is not a substitute for valid service. *Marriage of Grounds*, 271 Mont. at 352, 897 P.2d at 201 (citation omitted).

¶17 Hadford concedes that the Credit Bureau was not served in the wrongful discharge action and that, generally, the lack of service would bar her from holding it liable for the default judgment obtained therein. She contends, however, that the Credit Bureau was Big Sky's alter ego and, as a result, it received adequate notice that it was in jeopardy of personal liability and an opportunity to defend. In effect, she argues that notice to Big Sky was notice to its alter egos. We disagree, and address the authorities on which Hadford relies in turn.

¶18 Hadford first urges that the following exception to the general rule requiring service, set forth in 62B Am.Jur.2d, *Process*, § 284, p. 977-78, fits perfectly with the

**facts of this case:**

where the corporations have so intertwined their affairs and disregarded separate corporate forms that they are considered the same entity, . . . there is interlocking management between the corporations, or the person served is of such status within the corporate hierarchy that the parent corporation should be notified of service of process against it.

However, Hadford fails to take into account the context in which the quoted exception appears.

**¶19 The section preceding that quoted above states the general rule that service on the parent, subsidiary or affiliate of a corporate defendant generally does not constitute service on the defendant. 62B Am.Jur.2d, *Process,* § 283, p. 976-77. That general rule relates to a situation where a related corporation, rather than the corporate defendant named in the action, is served; such service generally is insufficient. The exception set forth in § 284, on which Hadford relies, relates to the same situation--namely, service on a related corporation rather than on the named corporate defendant; such service is sufficient to constitute service on the named corporate defendant under the circumstances outlined in § 284.**

**¶20 In the present case, the opposite procedural backdrop is present. Big Sky, the named corporate defendant in Hadford's wrongful discharge action, was served in that action and Hadford now attempts to render that service sufficient on a corporation never named in the original action under the alter ego theory. The quoted exception clearly does not apply to the situation before us here.**

**¶21 Hadford also contends that we held one entity liable for the obligations of another by piercing the corporate veil in the similar case of Glaspey v. Workman (1988), 230 Mont. 307, 749 P.2d 1083. She argues that Reber and the Credit Bureau were hiding behind the corporate veil when they permitted a default judgment to be entered against Big Sky and that they are liable on the judgment under *Glaspey*. Hadford is correct that *Glaspey* involved an action to pierce the corporate veil to collect on a judgment for wages, but that is where the similarity between the two cases ends.**

**¶22 After succeeding in a wage claim action against his employer, the plaintiff in *Glaspey* executed on the judgment but obtained only $5.49. He subsequently**

commenced an action to pierce his employer's corporate veil to collect on the judgment. *Glaspey*, 230 Mont. at 308, 749 P.2d at 1084. The action apparently was successful, but the trial court denied attorney fees on the basis that no statute authorized such fees and the plaintiff appealed. The issue before us was whether the statute authorizing attorney fees in wage collection actions permitted the employee to recover attorney fees in an action to pierce the corporate veil. *Glaspey*, 230 Mont. at 308, 749 P.2d at 1084. Interpreting the plain meaning of § 39-3-214, MCA, we concluded that the statute permitted recovery of attorney fees in a successful action to pierce the corporate veil to collect a judgment for wages. *Glaspey*, 230 Mont. at 309, 749 P.2d at 1084-85.

¶23 *Glaspey* was a statutory construction case addressing attorney fees in a successful action to pierce the corporate veil. No issue on appeal related to whether one entity was the alter ego of another or whether the corporate veil could be pierced. Nor was notice--the focal point of the present case--at issue in *Glaspey*. Thus, *Glaspey* does not support Hadford's argument that notice to Big Sky in the wrongful discharge action constituted notice to the Credit Bureau and Reber.

¶24 Relying on E.C.A. Environ. Management v. Toenyes (1984), 208 Mont. 336, 679 P.2d 213, Hadford next contends that, if separate corporate entities can be proved to be identical so as to pierce the corporate veil, notice to one entity is notice to all identical entities. *Toenyes* does not stand for the proposition for which it is cited.

¶25 In *Toenyes,* a wholly-owned subsidiary and its parent corporation filed separate actions against the same defendants and the defendants counterclaimed against both corporations; the actions were consolidated for trial. *Toenyes*, 208 Mont. at 339-40, 679 P.2d at 215. The district court ultimately pierced the subsidiary's corporate veil to hold the parent corporation liable on a contract. On appeal by both corporations, we considered several factors indicating that the parent and the subsidiary operated as the same entity, concluded that the subsidiary was the alter ego of the parent, and affirmed the district court's conclusion that the parent was liable on its alter ego's contract. *Toenyes*, 208 Mont. at 347-48, 679 P.2d at 218-19.

¶26 *Toenyes* was a straightforward piercing the corporate veil case in which both corporations were named plaintiffs and, via the counterclaims, named defendants in the action. The case did not involve any notice issue, much less the issue before us here of whether notice to one corporation constitutes notice to a different corporation

for purposes of subsequently trying to bind the different corporation to a judgment. Therefore, *Toenyes* is of no assistance to Hadford.

¶27 Hadford further argues that, in Towe v. Martinson (D.Mont. 1996), 195 B.R. 137, 145, the federal district court held that entities can be liable on judgments against their alter egos and it is not unfair to bind one party to a judgment against its alter ego. Hadford mischaracterizes *Towe*.

¶28 The federal district court in *Towe* did not bind entities to *judgments* against their alter egos or determine that it is not unfair to bind one party to such a *judgment*. Rather, that court affirmed conclusions by the bankruptcy court that certain entities were collaterally estopped from challenging findings and conclusions in earlier cases that they were alter egos of Edward Towe. *Towe*, 195 B.R. at 141-42. The federal district court also affirmed the bankruptcy court's conclusion that a third entity was the alter ego of Edward Towe and the third entity argued that it was "unfair and improper to bind Towe Farms to the *findings and conclusions*" of the two previous cases to which it was not a party with regard to the alter ego status of the other entities. *Towe*, 195 B.R. at 145 (emphasis added). Unlike the present case, *Towe* involved the application of collateral estoppel to prevent relitigation of an issue previously litigated. It did not involve an effort--such as that by Hadford here--to bind an alter ego to a monetary judgment obtained in an earlier action of which it had no notice of potential liability or opportunity to defend.

¶29 Finally, Hadford argues that A-Z Equip. Co. v. Moody (Ill. App. Ct. 1980), 410 N. E.2d 438, and Hughes v. Cox (Ala. 1992), 601 So.2d 465, support her argument that notice to Big Sky constituted notice to the Credit Bureau. However, those cases are distinguishable.

¶30 In *A-Z Equip. Co.*, the Illinois Court of Appeals stated that "where a summons is served upon defendant personally, and the circumstances are such as to indicate that he is the person intended to be served, then he is subject to the judgment, even though the process and judgment do not refer to him by his correct name." *A-Z Equip. Co.*, 410 N.E.2d at 440 (citation omitted). That court subsequently held that service in the name of Ken Moody Masonry Company was sufficient to put Ken Moody, the sole proprietor, on notice that he was the party intended to be sued. *A-Z Equip. Co.*, 410 N.E.2d at 440-41.

¶31 The significant differences between sole proprietorships and corporations aside, the fact remains that, in the Big Sky wrongful discharge action, Reber was served as the president--and acknowledged service as the registered agent--of Big Sky, the named defendant. This was an appropriate manner of serving Big Sky pursuant to Rule 4D(2)(e), M.R.Civ.P. Nothing about that service in the name of the Big Sky corporation was sufficient to put the Credit Bureau or Reber on notice that either was the party intended to be sued. Indeed, nothing of record in this case indicates in any way that Hadford intended to sue either the Credit Bureau or Reber in the wrongful discharge action. Thus, *A-Z Equip. Co.* is inapplicable here.

¶32 Nor does *Hughes* support Hadford's position that notice to Big Sky is notice to the Credit Bureau. There, the Alabama Supreme Court held that "a judgment entered against a trade name is a judgment against the individual doing business under that trade name. . . ." *Hughes*, 601 So.2d at 471. Hadford's wrongful discharge action was not a "trade name" case, however, but an action against a corporate entity with a separate legal existence.

¶33 In summary, none of the authorities on which Hadford relies supports her theory that notice to Big Sky in the wrongful discharge action constituted notice to the Credit Bureau. Hadford having failed to establish that the District Court erred in concluding that the Credit Bureau did not receive sufficient notice of the earlier case to hold it liable on the default judgment therein, we hold that the District Court did not err in granting summary judgment to the Credit Bureau.

¶34 2. Did the District Court abuse its discretion in denying Hadford's motion to further amend her complaint to substitute Reber as a named defendant?

¶35 On April 4, 1997, Hadford moved to amend her complaint to add Reber as a named, rather than a John Doe, defendant on the theory that he was the alter ego of both Big Sky and the Credit Bureau and, therefore, liable on the debts of both corporations. The District Court observed that, as a director of Big Sky, Reber had been a "party" to the action--albeit an unserved John Doe party--since the action was commenced in September of 1995. Since no summons for any of the John Doe defendants was issued within one year of the commencement of the action as required by Rule 41(e), M.R.Civ.P., the District Court concluded that Reber could not lawfully be served in the action whether further amendment of the complaint was allowed or not. On those bases, the District Court denied Hadford's motion to amend

and dismissed the action pursuant to Rule 41(e), M.R.Civ.P., as to all John Doe defendants.

¶36 We review a district court's denial of a motion to amend the pleadings to determine whether the district court abused its discretion. Porter v. Galarneau (1996), 275 Mont. 174, 188, 911 P.2d 1143, 1151-52 (citation omitted). We review conclusions of law to determine whether the district court's interpretation of the law is correct. Rocky Mountain Ent. v. Pierce Flooring (Mont. 1997), 951 P.2d 1326, 1340, 54 St.Rep. 1410, 1419 (citation omitted).

¶37 Rule 41(e), M.R.Civ.P., provides that, if a summons is not issued within one year of the commencement of an action, the action must be dismissed. *See also* Sinclair v. Big Bud Mfg. Co. (1993), 262 Mont. 363, 367, 865 P.2d 264, 267 (citation omitted). In addition to named defendants, the Rule provides protection for defendants who are fictitiously named under § 25-5-103, MCA; such a defendant also is entitled to dismissal if a summons is not issued within one year of the commencement of the action. Sooy v. Petrolane Steel Gas, Inc. (1985), 218 Mont. 418, 423-24, 708 P.2d 1014, 1018. A dismissal pursuant to Rule 41(e), M.R.Civ.P., is a dismissal with prejudice. First Call v. Capital Answering Serv., Inc. (1995), 271 Mont. 425, 428, 898 P.2d 96, 98.

¶38 Here, Hadford commenced her action against the Credit Bureau and John Does I through IV, alleged to be persons who "participated in the actions referred to herein" or the last designated directors of Big Sky, in September of 1995. Summons was timely issued and served on the Credit Bureau. No summonses were issued for the John Doe defendants within one year of the filing of Hadford's complaint in September of 1995 and, under *Sooy* and *First Call,* John Does I through IV were entitled to dismissal with prejudice of Hadford's action against them. Since it is undisputed that Reber was a John Doe defendant by virtue of being one of Big Sky's last directors, as the John Does were described in Hadford's original and amended complaints herein, we hold that the District Court correctly concluded that Reber could not be lawfully served in Hadford's action without regard to whether she was allowed to further amend her complaint to add him as a named, rather than a John Doe, defendant.

¶39 Hadford contends that she moved to further amend her complaint and substitute Reber as John Doe I on the basis of Reber's "role as a person who participated in the

actions referred to in the complaint[,]" rather than on Reber's status as a director and alter ego of the corporations. According to Hadford, this changed her theory regarding Reber and she could have filed a separate action against Reber--and had a timely summons issued--based on this new theory. On that basis, she argues that she was entitled to amend her complaint to substitute Reber for John Doe I. We disagree.

¶40 We note at the outset that Hadford's District Court brief supporting her motion to amend stated that her alter ego theory regarding the Credit Bureau was equally applicable to Reber, and she moved to amend her complaint to substitute Reber on that basis. Thus, her contention on appeal that she moved to substitute Reber on the basis of his individual participation is a change in Hadford's legal theory from that advanced in the trial court. In any event, however, we noted above that Hadford's original and amended complaints alleged that the John Does were either the last directors of Big Sky or "persons who participated in the actions referred to herein." Thus, Reber was a "party" to the action--albeit an unserved John Doe defendant--under both allegations from the outset and no new theory was being asserted against him. The fact remains that, under Rule 41(e), M.R.Civ.P., Hadford simply waited too long to have summonses issued for the John Doe defendants, including Reber.

¶41 Hadford also points out that it was the Credit Bureau which opposed her motion to amend on the basis of Rule 41(e), M.R.Civ.P. From this, she argues that the "more proper course" would have been for the District Court to allow the amendment and then require Reber to seek dismissal. Rule 41(e), M.R.Civ.P., specifically authorizes any interested party to move for dismissal thereunder, however, and it is clear that the Credit Bureau--having defended Hadford's action for approximately eighteen months--had a legitimate interest in opposing the motion in order to bring the litigation to an end. Moreover, extending litigation in the manner Hadford suggests, when the ultimate outcome would be the same, is a disservice to parties, counsel and trial courts whose resources are already strained.

¶42 We hold that the District Court did not abuse its discretion in denying Hadford's motion to further amend her complaint.

¶43 As a final matter, the Credit Bureau requests this Court to sanction Hadford for filing a frivolous appeal by awarding it damages. Under Rule 32, M.R.App.P., we may assess damages if we are satisfied that an appeal was taken "without substantial or reasonable grounds[.]" *See also* Krause v. Neuman (1997), 284 Mont. 399, 408, 943

**P.2d 1328, 1334 (citations omitted). Although Hadford's arguments were not successful, we are not satisfied that the appeal was taken without reasonable grounds. Therefore, we decline to award sanctions against Hadford.**

**¶44 Affirmed.**

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.