No. 00-858

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 293

DONALD W. RICHMAN, RITA

A. RICHMAN, DAN V. STRANDSKOV,

AND JERRI A. STRANDSKOV,

Plaintiffs and Appellants,

v.

GEHRING RANCH CORP. AND BALDY

MOUNTAIN RANCH, INC.,

Defendants, Respondents and

Cross-Appellants.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Frank Altman, Altman & Boucher, Havre, Montana

For Respondent Gehring Ranch Corp.:

David C. Dalthorp, Gough, Shanahan, Johnson & Waterman, Helena, Montana

For Respondent Baldy Mountain Ranch, Inc.:

Dale E. Reagor, Luxan & Murfitt, PLLP, Helena, Montana

Submitted on Briefs: June 7, 2001
Decided: December 20, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Appellants, Donald and Rita Richman and Dan and Jerri Strandskov, brought an action for injunctive, declaratory, and monetary relief in the District Court for the First Judicial District in Lewis and Clark County based on their contention that they were improperly denied access to real property owned by the Respondents, Gehring Ranch Corp. and Baldy Mountain Ranch, Inc. The District Court concluded that Appellants did not have access rights to Respondents' lands and therefore granted the Respondents' motion for summary judgment. The Appellants appeal from the order of the District Court and the Respondents cross-appeal. We affirm the order of the District Court.

¶2 The parties raise several issues on appeal and cross-appeal. However, we find the following restated issue to be dispositive:

¶3 Did the District Court err when it concluded that any access rights referred to in the agreement between the parties' predecessors were extinguished pursuant to the doctrine of merger?

FACTUAL BACKGROUND

¶4 On February 17, 1970, Clifford Gehring, Sr., entered into an agreement with the APS Corporation in which he agreed to sell APS certain real property located in Lewis and Clark County. Pursuant to this "Agreement", apparently drafted by the parties without the assistance of counsel, Gehring agreed to sell approximately 360 acres of the 4,000 acres of

real property he owned to the APS Corporation.

¶5 The Agreement gave APS the right to purchase, subdivide and develop lots for residential purposes on the 360 acres. The Agreement included a section entitled "Access Rights" which provided in relevant part as follows:

> Seller hereby grants privileges to future Buyers whereby they shall enjoy hunting rights, Snow Mobile [sic] rights, and horseback trail rights over other lands that the Seller now owns with the understanding that rules and regulations will be established by a Future Owners Association whereby people who do not abide by the rules of the Association and the directives of that group (on recommendation of the Developer and the Owner) may be restrained from such privileges ... Any rights given on other lands of Seller are subject to being rescinded for cause by Seller ...

¶6 An abstract of this Agreement was evenually filed with the Lewis and Clark County Clerk and Recorder on February 13, 1981.

¶7 On June 29, 1970 two deeds were recorded in Lewis and Clark County. One of the deeds, dated February 9, 1970, transferred title to approximately 67.5 acres of real property from Gehring to the APS Corporation. The second deed, dated June 12, 1970, transferred title to approximately 295.6 acres to the APS Corporation. Neither deed referred to the Agreement nor otherwise reserved any access rights over the lands retained by Gehring

¶8 On April 3, 1974, Gehring conveyed the remaining 3,640 acres to the Gehring Ranch Corporation. When Gehring died later in 1974, his daughters, Christine Gehring Holm and Susan Gehring, inherited all of his shares in Gehring Ranch Corp. In 1993, Susan formed Baldy Mountain Ranch, Inc., and transferred a portion of the remaining lands to that corporation. Susan is Baldy Mountain Ranch, Inc.'s, sole shareholder. Christine is Gehring Ranch Corp.'s sole shareholder.

¶9 APS subdivided the 360 acres into lots and sold those lots to individual purchasers. The Appellants in this case are some of the successors in interest to the APS Corporation. The Strandskovs purchased a lot in 1995. The Richmans purchased their lot in 1998. Neither the Strandskovs nor the Richmans purchased their lots directly from the APS Corporation. Neither the original purchasers of the lots now owned by the Richmans and Strandskovs nor any of the other purchasers of lots within the 360 acre parcel have ever sought to

assert access rights on the retained 3,640 acres.

¶10 Both Gehring Ranch and the Baldy Mountain Ranch have established an ongoing policy of managing hunting on ranch lands and have attached conditions to using ranch lands for recreational purposes. Access to ranch property is restricted by locking perimeter gates, especially during hunting season.

¶11 After being told they did not have the right to hunt on ranch lands, the Appellants filed suit in the District Court for the First Judicial District in August 1999. The Appellants alleged that the Respondents improperly excluded them from the land now owned by the Gehring Ranch Corp. and Baldy Mountain Ranch, Inc. They further maintained that the Agreement created an easement over Respondents' land, and sought injunctive, declaratory and monetary relief to that effect.

¶12 Following a hearing, the District Court granted Respondents' motion for summary judgment. The District Court concluded that the language in the Agreement which purportedly created an easement failed to identify the "other lands" retained by Gehring. In addition, the District Court concluded that any agreement prior to execution of the deeds was merged with the deeds and since the deeds transferring title did not provide for access, the Appellants lost any access rights they may have been promised in the Agreement.

¶13 The Appellants now appeal from the District Court's order granting summary judgment to Respondents. The Respondents have advanced several alternative arguments on cross-appeal which we need not address.

## STANDARD OF REVIEW

¶14 Our standard of review of appeals from summary judgment is de novo. *Motarie v. Northern Montana Joint Refuse Disposal Dist*. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We apply the same criteria which is applied by the district court pursuant to Rule 56 (c), M.R.Civ.P. *Spinler v. Allen*, 1999 MT 1960, ¶ 14, 295 Mont. 139, ¶ 14, 983 P.2d 348, ¶ 14. The moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Hadford v. Credit Bureau of Havre, Inc*., 1998 MT 179, ¶ 14, 289 Mont. 529, ¶ 14, 962 P.2d 1198, ¶ 14. Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact.

*Hadford,* ¶ 14.

## DISCUSSION

¶15 This appeal focuses on whether the 1970 Agreement between Gehring and APS Corporation created an easement which would allow the Appellants, as purchasers of lots within the 360 acres originally purchased by the APS Corporation, to hunt and recreate on the lands which now comprise the Baldy Mountain and Gehring Ranches. Although the parties raise several issues on appeal and on cross-appeal, we find the issue of whether the purported access rights were extinguished according to the contract law principle of merger to be dispositive. Therefore, we do not address the additional reasons for affirming the District Court offered by the Respondents on cross-appeal.

¶16 The Appellants contend that the District Court erred when it held that because the deeds did not mention the Agreement nor otherwise create an easement, the Appellants lost the benefit of any access rights created by the Agreement. They argue that the Agreement clearly demonstrates Gehring's intention to grant an easement. Specifically, the Appellants focus on the clause which stated "Seller *hereby grants* privileges to future Buyers whereby they shall enjoy hunting rights ... over other lands that the Seller now owns..." The language used by Gehring, according to the Appellants, was not a promise to be carried out at some later date as was the contract for sale in *Urquhart v. Teller*, 1998 MT 119, 288 Mont. 497, 958 P.2d 714, on which the District Court relied, but rather an immediate grant of an easement which conformed to the statutory requirements for conveyance of estates in real property found in § 70-20-103, MCA. Consequently, the granted easements did not merge with the executed deeds and the District Court erred when it concluded that they did.

¶17 The Respondents contend that Gehring did not intend to grant an easement. Rather, the Agreement was simply a contract for the future sale of real property and the District Court was correct when it concluded that any rights contained in the Agreement were extinguished when the Agreement merged with the deeds pursuant to general principles of contract law.

¶18 We agree with the District Court's conclusion that any potential access rights created in the Agreement merged with the deeds. The clause in the Agreement relied on by the Appellants was part of a larger agreement to transfer property in the future. Absent the future transfer of property, there was no intention to provide access. When interpreting

written documents, the cardinal rule of construction is to glean the intent of the parties from the four corners of the document and not to focus on isolated tracts, clauses and words. *Rumph v. Edwards* (1979), 183 Mont. 359, 367-68, 600 P.2d 163, 167.

¶19 Gehring, the owner of the property to be burdened by the purported easement, did not intend to grant an easement - at most he intended to provide for potential access privileges if certain conditions were met.

> Seller hereby grants privileges to future Buyers whereby they shall enjoy hunting rights, Snow Mobile [sic] rights, and horseback trail rights over other lands that the Seller now owns with the understanding that rules and regulations will be established by a Future Owners Association whereby people who do not abide by the rules of the Association and the directives of that group (on recommendation of the Developer and the Owner) may be restrained from such privileges ... Any rights given on other lands of Seller are subject to being rescinded for cause by Seller...

¶20 As this section of the Agreement indicates, any potential access privileges were conditioned upon the formation of an owners association and the adoption of rules to govern use of the privileges. Absent future transfer of the 360 acres to APS, there would have been no association nor rules. The Agreement also provided for rescission of any potential access rights. The rescission language is more consistent with the interpretation of the Agreement as a contract for deed which provided for potential access rights than as a present grant of an easement. A portion of a clause granting rights to as yet unidentified "future buyers" on unspecified land if certain conditions were met does not persuade us that Gehring intended to grant an easement. In fact, none of the other landowners have ever sought to assert the access rights now asserted by the Appellants.

¶21 Therefore, we conclude that the terms of the Agreement merged with the deeds and any purported access rights were extinguished pursuant to the principle of merger. This Court explained and applied the contract law principle of merger in *Urquhart v. Teller*, 1998 MT 119, ¶ 28, 288 Mont. 497, ¶ 28, 958 P.2d 714, ¶ 28, where we stated:

> It is a general tenet of contract law that all provisions in a contract for sale of real property are merged into the deed. Thus, when a deed has been executed, the purchaser's rights are generally found in the deed covenants, not the executed contract. An exception to the general rule of merger occurs when parties intended for an agreement in a contract for sale to be collateral. Covenants relating to title,

quantity, and possession of land are generally not collateral and merge into the deed. [Citations omitted.]

¶22 In *Urquhart*, we considered whether restrictive covenants found in a contract for deed could be enforced when the deed itself was silent. We noted that the doctrine of merger applies where a buyer and seller enter into a contract for the sale of real property and subsequently execute a deed conveying title to the real property. *Urquhart*, ¶ 31. Our holding that the parties intended the restrictive covenants to merge with the deed conveying title was based on several factors: the deed conveying title did not refer to the covenants, the parties did not record the contract for deed at the time it was executed, and no separate declaration of covenants was ever filed. *Urquhart*, ¶ 32.

¶23 The Appellants argument that the Agreement granted an easement is, in effect, an attempt to provide an exception to the merger doctrine's general rule that the deed contains all the rights of the parties. In other words, the Appellants contend that the quoted clause in the Agreement granted an easement, and was therefore a collateral agreement which did not merge with the deeds.

¶24 We find this argument unpersuasive for several reasons. As in *Urquhart*, neither of the deeds conveying title from Gehring to the APS Corporation refer to the Agreement. No declaration of hunting, snowmobiling, or horseback trail riding privileges was ever filed separately. Nor was the Agreement filed upon execution or when title to the property was transferred to APS pursuant to the deeds. APS only belatedly filed an abstract of the Agreement over ten years later in February of 1981. Neither of the Appellants' deeds refer to any access rights over what are now the Gehring and Baldy Mountain ranches. There is no evidence that access rights were intended to be part of a collateral agreement supported by additional consideration beyond the purchase price for the real property.

¶25 Furthermore, covenants relating to title, quantity, and possession of land are generally not collateral and merge with the deed. *Urquhart*, ¶ 28. Any grant of access rights over all the lands retained by Gehring would certainly erode the owner's right to exclusive possession of that real property and, therefore, would not have been collateral.

¶26 Consequently, we apply the general rule of merger and hold that the District Court did not err when it concluded that any potential access rights referred to in the Agreement merged with the deeds. Accordingly, the Order of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ JIM REGNIER