**FILED**

April 29 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0709

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 146

HOLTER LAKESHORES HOMEOWNERS
ASSOCIATION, INC.,

        Plaintiff and Appellant,

    v.

STEPHEN L. THURSTON, VICTORIA J.
THURSTON, LONNIE R. THURSTON,

        Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 06-776
Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            R. J. "Jim" Sewell, Jr., and Bruce M. Spencer, Smith Law Firm, Helena,
Montana

        For Appellees:

            Cherche Prezeau and Michael F. McMahon, Hughes, Kellner, Sullivan &
Alke, Helena, Montana

            William P. Driscoll, Franz & Driscoll, Helena, Montana

Submitted on Briefs:  September 24, 2008
Decided:  April 29, 2009

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Appellant, Holter Lakeshores Homeowners Association (HLHA), brought suit against Stephen, Victoria, and Lonnie Thurston (Thurstons), to quiet title to an easement for parking and boat docking on two lots next to Holter Lake in Lewis and Clark County. The District Court granted summary judgment in favor of Thurstons. HLHA appeals.

¶2     The dispositive issue on appeal is whether the District Court correctly concluded HLHA did not have an enforceable easement to access the two lots in question for parking and access to Holter Lake.

¶3     In 1973, Bruce and Betty Nelson (Nelsons) petitioned the Lewis and Clark County Commission to establish the Holter Lakeshores Subdivision (Subdivision) on the west shore of the Oxbow Bend on Holter Lake. As the proposed subdivision could not be reached by road, the Lewis and Clark County City-County Planning Board would only approve it if Nelsons provided parking and boat docking facilities that were reachable by road, for the use of those who would own lots in the subdivision.

¶4     To satisfy the condition that they provide parking, Nelsons acquired two adjoining lots about four miles north of the Subdivision, across the lake on its East side: a 1 acre lot on the lake and a 1.49 acre lot adjacent to the lakefront lot. These two lots are the property upon which HLHA seeks to specifically enforce an easement.

¶5     Nelsons placed a number of restrictions on the use of the lots in the Subdivision by executing a Declaration of Conditions, Covenants and Restrictions (Declaration). The

2

Declaration was recorded in the office of the Lewis and Clark County Clerk and Recorder on June 29, 1973. The Declaration indicated that the Nelsons, as original owners of the lots in the Subdivision, had acquired property down the lake for parking, but it did not describe this property other than to say which township and range it was in. The Lewis and Clark County Commission then approved the Subdivision.

¶6 The Declaration provides, *inter alia*, that the owners of the lots in the Subdivision could form a homeowners association. However, the Declaration states that a homeowners association would only be formed after 75% of the lots in the Subdivision had been sold and then only if and when an election was held and 75% of the lot owners voted that it be formed. In the section of the Declaration providing for the possible formation of a homeowners association, it went on to state:

> One of the areas of responsibility of the Home Owners Association will be in aiding and working with the Original Owners in regards to an area in Sec. 9, T.14 N. R. 3 W. which area Original Owners have purchased to be able to assure Lot Owners of future parking spaces under rules and regulations and assessments to be established by Original Owners. Lot Owners have no obligation to use this area but will have first rights to do so under the terms established, which terms shall be in line with other similar facilities within the area.

¶7 No homeowners association was formed until some 33 years after the Declaration was filed, just before this litigation commenced. The record does not show the lots in question have ever been used by those owning lots in the Subdivision.

¶8 About 19 years after forming the Subdivision, in 1992, Nelsons conveyed the lots in question to Thomas E. Clark by warranty deed (1992 Deed). The 1992 Deed provided:

3

This deed is subject to the following conditions, covenants and agreements:

Those certain conditions, covenants and agreements dated June 22, 1973, wherein Bruce A. Nelson and Betty R. Nelson are called "Original Owners" and which were recorded in Book 100, Page 704 of the records of Lewis and Clark County, Montana.

¶9 The 1992 Deed then quotes verbatim the language of the Declaration set out in ¶ 6 above. It further states:

Now therefore, by acceptance of this deed Thomas E. Clark, his heirs and assigns does hereby accept the said covenants above referred to and does hereby agree to carry forth in every way the intention of the said covenants and accepts the fact that the property described as follows:

[Herein is then included a metes and bounds description of the 1.49 acre lot, which does not have lake access.]

is to be used to provide parking spaces.

¶10 The 1992 Deed also mentioned a "companion property":

[The] companion property which may be used by Thomas E. Clark, his heirs and assigns as he may see fit, with these stipulations, that it has been the intent of the Original Owners that a ramp for docking boats would be advantageous to the total facility and that a residence for the Owner or Operator of the total facility would also be located on this parcel along with other development, which is compatible to the total intent of the covenants above set forth.

. . .

That said companion property may not be sold separately unless safeguards and provisions are provided for the future protection of said Home Owners and the said Thomas E. Clark, for himself, his heirs, and assigns does hereby attest that he will vigorously protect the rights of the Home Owners who are mentioned in the said Covenants, that he will attempt to provide them with a facility which will serve them well and conveniently and fairly and that he will always honor their right to use the facilities which maybe [sic] created and that he will and does hereby accept the said property and by doing so does agree to protect the Original Owners and hold them harmless in relation to this matter

4

and to the total parking area obligation as set forth in the said covenants.

¶11 The 1992 Deed from Nelsons to Clark also states it provides the legal description of the companion property. However, the description of the companion property is the same as the 1.49 acre lot, which was previously described. The 1 acre lot, which has lake access, is not described in the 1992 Deed. HLHA argues this is an obvious mistake and it was the intention of the parties that the companion property was the 1 acre lot in question here. Thurstons do not disagree it was the intention of Nelsons and Clark that the companion property mentioned in the 1992 Deed was the 1 acre lot. However, Thurstons argue any mistake in this regard is meaningless.

¶12 In 1998, Clark conveyed the Subject Property to Thurstons by warranty deed (1998 Deed). The 1998 Deed does not reference the Declaration or the 1992 Deed and does not restrict Thurstons' use or sale of either of the lots. After they purchased the two lots in question, Thurstons improved them at substantial cost to themselves.

¶13 The record shows that, following the execution of the 1998 Deed, no one connected with the Subdivision indicated any interest in using the lots until around 2004 when it appeared the parking and lake access they had been using might be curtailed. At that time, someone who may have been connected to the Subdivision inquired of Thurstons about their right to use the lots for parking and boat docking. Thurstons denied access. No property owner in the Subdivision insisted on a right to use these lots until 2006. Thurstons again denied access to these lots.

¶14 Property owners in the Subdivision formed HLHA on May 16, 2006. HLHA filed the complaint in this action to quiet title to its right to use the lots for parking and lake access on October 26, 2006. After some discovery, Thurstons moved for summary judgment. HLHA also moved for summary judgment. The District Court granted Thurstons' motion for summary judgment and denied HLHA's motion.

¶15 The District Court reasoned the Declaration did not create an interest in the lots HLHA could enforce. The District Court concluded the language in both the 1992 Deed and the Declaration merely expressed the intentions of the Nelsons with regard to the use of the lots, and use of these lots by owners of property in the Subdivision was conditioned on the formation of a homeowners association and establishing rules, regulations, and assessments. The District Court reasoned the conditions precedent for creation of an interest in the lots had not been performed.

¶16 The District Court went on to hold that, due to the 33-year delay between recording the Declaration and formation of the homeowners association, HLHA's claim was barred by laches. The District Court also stated that, even if it were to consider the 1992 or 1998 deeds, the statute of limitations would bar HLHA from enforcing any interest in the lots. HLHA appeals.

¶17 We review summary judgment orders de novo. *Richman v. Gehring Ranch Corp.*, 2001 MT 293, ¶ 14, 307 Mont. 443, 37 P.3d 732. The moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law.

6

*Richman*, ¶ 14 (citing *Hadford v. Credit Bureau of Havre, Inc.*, 1998 MT 179, ¶ 14, 289 Mont. 529, 962 P.2d 1198). Once the moving party has met this burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *Richman*, ¶ 14 (citing *Hadford*, ¶ 14).

¶18 The construction of a deed granting an interest in real property is governed by the rules of contract interpretation. *Nelson v. Barlow*, 2008 MT 68, ¶ 13, 342 Mont. 93, 179 P.3d 529; *Mary J. Baker Revoc. Trust v. Cenex Harvest*, 2007 MT 159, ¶ 18, 338 Mont. 41, 164 P.3d 851 (citing § 70-1-513, MCA).

¶19 HLHA argues the District Court erred in concluding HLHA's members may not specifically enforce their right to use the lots for parking and boat docking because the doctrine of laches does not apply, the eight year period of limitations has not expired, and the interest is not subject to unmet conditions precedent. Thurstons respond that there is no recorded right to use the property, performance of conditions precedent necessary to create an easement had not occurred, and the District Court did not err in concluding laches bars any rights HLHA may have.

¶20 We conclude the District Court was correct in holding that the Declaration recorded in 1973 and the language in the 1992 Deed did not result in an enforceable easement to use the two lots in question. Thus, we need not consider laches and the statute of limitations.

¶21 The two lots upon which HLHA seeks to specifically enforce an easement in this action, now owned by Thurstons, were not described with particularity in the Declaration.

The Declaration did not establish an easement on the lots in question. *See Nelson*, ¶ 16. The 1992 Deed from Nelsons to Clark did refer to the Declaration, and is an instrument that attempts to create an easement based on an express reservation. An easement is a right which one person has that is attached as a burden to the land of another, which allows the easement holder to use the other's land for a specific purpose. Section 70-17-101(4), MCA; *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84.

¶22 A grant of an easement may be subject to conditions precedent. A condition precedent is one which is to be performed before some right or obligation dependent thereon accrues. However, if the uncertain event upon which the obligation hinges does not take place, the obligation does not materialize. *See Richman*, ¶¶ 18-19; *Thompson v. Lithia Chrysler Jeep Dodge*, 2008 MT 175, ¶ 21, 343 Mont. 392, 185 P.3d 332.

¶23 An agreement, the terms of which are not sufficiently certain to make the act which is to be done clearly ascertainable, cannot be specifically enforced. *Quirin v. Weinberg*, 252 Mont. 386, 393-94, 830 P.2d 537, 541 (1992) (citing § 27-1-412(5), MCA). A contract that necessitates specific performance must be complete and certain in all essential matters included within its scope. An agreement that requires the parties to agree to material terms in the future is not an enforceable agreement. *GRB Farm v. Christman Ranch, Inc.*, 2005 MT 59, ¶ 11, 326 Mont. 236, 108 P.3d 507 (citing *Steen v. Rustad*, 132 Mont. 96, 106, 313 P.2d 1014, 1020 (1957)).

¶24 Here, considering the Declaration and the 1992 Deed, there were several things that

had to occur before the two lots now owned by Thurstons could be burdened by any easement in favor of HLHA. First, 75% of the lots in the Subdivision had to be sold. Next, it was necessary that the owners of Subdivision lots hold an election and that 75% of them vote to form a homeowners association. Then, if and when these two conditions were performed, the homeowners association was to "work with" the owner of the lots.

¶25    Relating to the 1.49 acre lot that has no access to the lake, it appears that Nelsons desired to reserve an easement for some parking spaces for the members of a homeowners association, if one was formed. However, there is no indication of how many parking spaces were to be in the easement, where they were to be located, or how much of the lot would be used for parking.

¶26    In regard to the 1 acre lot with lake access, even if it had been described in the 1992 Deed, the purported easement reservation states the lot could be used by Clark and his heirs and assigns as they may see fit. The language in the deed goes on to vaguely describe some other facility and a residence that might be built.

¶27    The 1992 Deed, in essence, attempts to reserve an easement in favor of an association that might never be formed, by requiring that the possible association and Clark work together to reach an agreement. It is left for future negotiations how many parking spaces there would be, where the parking spaces would be located, how much of the lots could be used, where any boat ramp would be located, how much the association would have to pay to construct any facilities, what assessments the owners of the lots could levy for use of parking

and boat launch facilities, and what rules and regulations would govern parking and use of the boat ramp. The easement reservation language in the 1992 Deed is merely a statement that, if in the future a homeowners association is formed, the association and the owners of the lots will negotiate to see if they can reach an agreement on the terms of an easement. Material terms of the easement are not agreed upon. The scope and terms of the easement which Nelsons attempted to reserve are too vague to be specifically enforced. The 1992 Deed is insufficient to constitute an easement by reservation.

¶28 The District Court did not err in granting Thurstons' motion for summary judgment. Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE