**FILED**

11/01/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0514

DA 21-0514

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 217

JIM L. TOWSLEY and BETTY SMITH TOWSLEY,

Plaintiffs and Appellees,

v.

DAVID P. STANZAK, MARGO L. STANZAK, CRAIG FITCH,
CARYN MISKE, LAURENCE B, MILLER, JR., STEPHEN M. ZANDI,
KARIN M. ZANDI, and all persons, known or unknown, claiming or
who might claim any right, title, interest in or lien or encumbrance
upon the personal property described in the Complaint below which
is adverse to the Plaintiff's ownership or a cloud upon Plaintiff's title
thereto, whether such a claim or possible claim may be present or contingent,

Defendants and Appellants.

APPEAL FROM:     District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DV-20-18
                 Honorable Jason Marks, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Jesse Kodadek, Elizabeth Erickson, Worden Thane P.C., Missoula,
                Montana

        For Appellees:

                Whitney M. Kolivas, Gregory G. Schultz, Crowley Fleck PLLP,
                Missoula, Montana

                                Submitted on Briefs:  August 10, 2022

                                       Decided:  November 1, 2022

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Defendants David P. Stanzak, Margo L. Stanzak, Craig Fitch, Caryn Miske, Laurence B. Miller, Jr., Stephen M. Zandi, and Karin M. Zandi (collectively Stanzak) appeal the decision of the Fourth Judicial District Court, Missoula County, granting summary judgment to Appellee Rose Family Trust (Rose)[1] and quieting title to the claimed easement in Rose's favor.

¶2 We affirm and address the following issue:

*Did the District Court err by determining the Notice of Purchaser's Interest did not convey title to the easement at issue?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Margaret Rose owned a parcel of land located in the eastern half of Section 18, Township 15, Range 21, Missoula County, just northwest of Frenchtown, Montana. In April 1975, she recorded Certificate of Survey 569 (COS 569), which created a new 23.24-acre parcel (Parcel 1) from a remaining tract from Rose's original parcel of land. COS 569 depicted a "private road easement" about a quarter-mile long and thirty foot wide, connecting Parcel 1 to Houle Creek Road, which we refer to herein as the Claimed Easement. The Claimed Easement began at a point on the western boundary of Parcel 1

---

[1] Appellees Jim L. Towsley and Betty Towsley appear in place of Rose Family Trust after acquiring the subject real property from the Trust following entry of the District Court's quiet title judgment.

3

just above the southwest corner and ran a straight, southwesterly course across Rose's remaining tract until it connected with Houle Creek Road (see map, below).[2]



¶4    In July 1975, Rose recorded COS 648.  This COS divided Rose's remaining tract into a 59.15-acre tract lying south and southwest of Parcel 1 (Parcel E), and a northern tract (Rose Trust North Parcel) lying along the western boundary of Parcel 1.  COS 648 indicated

---

[2] The maps herein were adapted from the record by the Court solely for purposes of this opinion. They are intended only to illustrate the features of the disputed property interest and the progression of related property transactions, and have no bearing on the outcome.  The location of the Claimed Easement approximates the path traveled according to the coordinates given in COS 569.  The COS 648 Easement is also an approximation adapted from COS 648.

4

an easement for Parcel 1 (COS 648 Easement) that traced the northern-most boundary of Parcel E, running northwesterly from a point near the southwest corner of Parcel 1 to Houle Creek Road (see above map). The metes and bounds description for the new COS 648 Easement stated, "REPLACEMENT EASEMENT FOR C.S. #569 PARCEL."

¶5     In November 1977, Rose, as Seller, and Kenneth and Teri Benjamin (Benjamins),[3] as Buyers, recorded a Notice of Purchaser's Interest (NPI) as part of their transaction for the contractual sale and purchase of Parcel 1. In pertinent part, the NPI stated:

> WITNESSETH: That the Seller on the date hereof, entered into a written agreement for the sale to the Buyers of the following described real property, situated in the County of Missoula, State of Montana, to-wit:
>
> A parcel of land located in the East ½ of Section 18, T. 15 N., R. 21 W., P.M.M., Missoula County, Montana . . . [Coordinates defining Parcel 1].
>
> Subject to a 30 foot access easement being 15 feet each side of the following described centerline; beginning at a point N.01°30'53" W., 63.02 feet from the Southwest Corner of the above described parcel; thence S.76°17'07" W., 54.60 feet; thence S.58°28'52" W., 1174.75 feet to an intersection with the centerline of an existing U.S. Forest Service Road, according to the official map or plat certificate of Survey No. 569, thereof on file and of record in the office of the County Clerk and Recorder, Missoula County, Montana.[4]
>
>                    .   .   .
>
> That said agreement has been escrowed in the Western Montana National Bank, of Missoula, Montana, together with a Warranty Deed from the Seller to the Buyers. That said agreement requires payments to be made by the Buyers in amortization of the balance due on the purchase price, and *upon*

---

[3] The Benjamins are predecessors in interest to the Appellants.

[4] The coordinates stated here are identical to those used in COS 569. They describe a road roughly 1,200 foot long, running in a southwesterly direction from a point near the southwest corner of Parcel 1, in the location of the "Claimed Easement" as depicted on the maps herein.

*payment in full of the purchase price, the said Western Montana National Bank of Missoula, as the escrow agent, is instructed to deliver the said Warranty Deed to the Buyers.* A copy of said agreement may be obtained from the Buyers at the above address.

(Emphasis added.) It is undisputed that the escrowed Warranty Deed referenced in the NPI was never delivered to the Benjamins or recorded.

¶6    In December 1979, Benjamins recorded Certificate of Survey 2233 (COS 2233), which reflected division of Parcel 1 into smaller parcels, Parcels A, B, and C. COS 2233 did not depict or describe the Claimed Easement, consistent with the statement on COS 648 that the Claimed Easement had been replaced. Instead, COS 2233 depicts Easements A and C connecting the newly subdivided parcels to Houle Creek Road. On the same day, deeds of easement were recorded wherein Rose granted those access easements to the Benjamins for the benefit of Parcels A, B, and C. Parcel C was further subdivided by COS 2276 into Parcel C-1 and the remainder of Parcel C. By warranty deeds recorded in 1980 and 1984, Rose deeded Parcels A, B, C, and C-1 to the Benjamins. Each of these parcels are now owned by an individual Appellant, and have access from Houle Creek Road by the above-described easements, as indicated in the map below. Thus, the Claimed Easement would provide additional access to these parcels.

6



¶7    In January 2020, Rose filed this action to quiet title to and enjoin use of the Claimed Easement by the Stanzak Appellants, to resolve the issue ahead of an intended sale of Rose property to the Towsleys. Stanzak claimed an interest in the Claimed Easement based on COS 569 and the 1977 NPI. Rose contended the 1977 NPI did not transfer the Claimed Easement to the Appellants, and, alternatively, the subsequent adjustment of the easements by COS 648 and COS 2233 extinguished the Claimed Easement. Following cross-motions for summary judgment, the District Court ruled in favor of Rose, holding the 1977 NPI did not constitute a valid instrument of conveyance, and therefore did not transfer any easement

rights to Stanzak. Accordingly, the District Court issued a decree quieting Rose's title to the Claimed Easement. Stanzak appeals.

**STANDARD OF REVIEW**

¶8 In accordance with M. R. Civ. P. 56, we review district court grants and denials of summary judgment de novo. *O'Keefe v. Mustang Ranches HOA*, 2019 MT 179, ¶ 14, 396 Mont. 454, 446 P.3d 509. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

**DISCUSSION**

¶9 *Did the District Court err by determining the Notice of Purchaser's Interest did not convey title to the easement at issue?*

¶10 Stanzak argues that the 1977 NPI created and transferred to their predecessors an easement by reference to COS 569 and the easement depicted therein, thus contending that the NPI was itself an instrument of conveyance. Alternatively, Stanzak argues, premised upon their reading of a sequence of recording statutes, the NPI was not itself an instrument of conveyance but functioned as an *abstract* of an instrument of conveyance—the 1977 contract for deed.[5] As such, they contend the NPI properly granted the Claimed Easement to the Benjamins, Stanzak's predecessors in interest.

---

[5] Specifically, Stanzak sequences § 70-20-115(1), MCA ("purchaser under contract for deed" and "abstract"), § 70-21-101, MCA ("instrument"), § 70-21-301, MCA ("conveyance"), § 70-21-201,

8

¶11 In response, Rose argues the 1977 NPI is not an instrument of conveyance because it contained no "language of conveyance," and therefore effectuated no transfer in title. Rose argues the statutes cited by Stanzak neither define "instrument of conveyance" for purposes of the incorporation-by-reference doctrine, nor encompass the application of that doctrine. Lastly, Rose contends the easements granting access to all the existing parcels, established by her subsequent deeding of those easements in reference to COS 648 and COS 2233, effectively vacated the Claimed Easement.

¶12 "An easement is a nonpossessory interest in the land," providing the holder a right to use another's property for a specified purpose. *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84. "Easements arise by express grant or reservation in a written instrument of conveyance, written declaration of covenant, operation of law (implication from necessity or prior use), or prescription." *O'Keefe*, ¶ 16 (citing *Blazer*, ¶ 26). An expressly granted appurtenant easement, as claimed here, requires the grantor to hold title to both the dominant and servient estates, and the severance of those estates must be made in "a written instrument of conveyance that is substantively sufficient to convey the severed estate, grant or reserve the intended easement, identify the dominant and servient estates, and indicate the nature and scope of the right reciprocally burdening and benefitting the servient and dominant estates." *O'Keefe*, ¶ 17; *see also O'Keefe*, ¶ 18 (non-possessory

*et. seq.*, MCA (recording procedures), and § 70-21-305, MCA (effect of recording an "abstract of conveyance").

9

easements generally must include language sufficient to describe the "lesser interest conveyed or reserved and effect the conveyance.").

¶13     In the absence of language expressly granting an easement, an express easement may nevertheless be established by a reference within "an instrument of conveyance to a recorded plat or certificate of survey on which the easement is adequately described." *Yorlum Props. v. Lincoln County*, 2013 MT 298, ¶ 16, 372 Mont. 159, 311 P.3d 748 (quoting *Blazer*, ¶ 41).  Reference to a certificate of survey, subdivision plat, or attached map incorporates that document in its entirety within the referencing instrument of conveyance.  *O'Keefe*, ¶ 18 (citing § 76-3-304, MCA).  The instrument of conveyance and the referenced document(s) "must be sufficient together to express clear and unambiguous *grantor intent* to grant or reserve an easement in a manner that clearly and unambiguously describes or otherwise manifests with reasonable certainty the intended dominant and servient estates, use, and location of the easement."  *O'Keefe*, ¶ 18 (emphasis added).  Additionally, to constitute a valid conveyance, the instrument must, "(1) identify the grantor and the grantee, (2) adequately describe what is being conveyed, (3) *contain language of conveyance*, and (4) be signed." *Broadwater Dev., L.L.C. v. Nelson,* 2009 MT 317, ¶ 27, 352 Mont. 401, 219 P.3d 492 (emphasis added); *see also O'Keefe*, ¶ 18.  An instrument lacking language of conveyance may nonetheless create an interest in an easement if the instrument constitutes an abstract of a separate, valid instrument of conveyance.  Section 70-21-305, MCA (an abstract of a conveyance or encumbrance of

10

real property must be "acknowledged or proved and certified and recorded as prescribed by law.").

¶14 The dispute here arises from application of the latter two principles: whether the 1977 NPI contains the requisite language to itself constitute an instrument of conveyance that referenced the Claimed Easement; or whether, alternatively, the NPI constitutes an *abstract* of an instrument of conveyance of the Claimed Easement—that being the 1977 contract for deed that referenced the Claimed Easement. We conclude the NPI here fails to convey the Claimed Easement under either principle.

¶15 We have explained that "language of conveyance" is language whereby an interest in real property can be "created, granted, assigned, surrendered, or declared." *Broadwater Dev.*, ¶ 31 (citing § 70-20-101, MCA). In *Broadwater*, we found that the phrase, "'We the undersigned property owners, *hereby create* this 60 foot emergency public access and utility easement,'" constituted "language of conveyance" because the grantor's "intent to convey a property interest over their properties is clear and unmistakable." *Broadwater Dev.*, ¶ 31 (emphasis added). We have also analyzed language of conveyance as the language that effectuates the grantor's intended purpose for that instrument; that is, in the case of an easement, whether the instrument's purpose expressly included an intention to grant the easement. *See O'Keefe*, ¶¶ 18-20 (assessing whether a series of deeds and referenced subdivision plats conveyed an intention by the grantor to create a common roadway plan burdening each subdivision plot bordering a common roadway, even after severance of the plots from the subdivision). In *O'Keefe*, deeds severing a pair of plots

11

from a subdivision referenced the subdivision plat with the phrase "subject to easement and . . . reservation of record." This Court deemed that language as an unambiguous manifestation of the grantor's intent to burden the severed lots with an easement benefitting the remaining subdivision plots. *O'Keefe*, ¶¶ 20-21.

¶16 Turning to the 1977 NPI, we note preliminarily that the intent of the parties is to be gleaned from the "four corners of the document." *Richman v. Gehring Ranch Corp.*, 2001 MT 293, ¶ 18, 307 Mont. 443, 37 P.3d 732. Here, there is no language in the NPI establishing an intention by Rose to grant title to the Claimed Easement by way of that document. The NPI does not "contain language of conveyance," *Broadwater Dev.*, ¶ 27, or other language that would "effect the conveyance" of the easement. *O'Keefe*, ¶ 18. It did not "create[], grant[], assign[], surrender[], or declare[]" a property interest, *Broadwater Dev.*, ¶ 27, or sever and "convey the severed estate." *O'Keefe*, ¶ 17. Rather, as set forth herein, the NPI explained that Rose and the Benjamins "entered into a written agreement for the sale" of the property, with the ultimate transfer of the property by deed conditioned upon completion of the contract (". . . .upon payment in full of the purchase price . . . the escrow agent, is instructed to deliver the said Warranty Deed to the Buyers."). Thus, by its language, the NPI merely provided notice of a potential grant of the property, to be effectuated by deed upon future performance of the contract. While, as the District Court noted, the NPI referenced the Claimed Easement described within COS 569, it did not itself constitute an instrument of conveyance of that easement. Even if individual words used in the property description were read as consistent with the language of

12

conveyance, it is clear from the four corners of the document that reference was being made to a future conveyance of that interest, and was not effectuated by the NPI itself.

¶17 Stanzak alternatively argues the NPI nonetheless functioned as an instrument of conveyance pursuant to § 70-21-305, MCA, because it is an abstract of an instrument of conveyance, which they contend is the referenced contract for deed entered between Rose and the Benjamins in 1977. Section 70-21-305, MCA, provides:

> An *abstract of a conveyance* or encumbrance of real property, which abstract is acknowledged or proved and certified and recorded as prescribed by law, shall have the same effect for all purposes of this part as if the conveyance or encumbrance of real property had been acknowledged or proved and certified and recorded as prescribed by law.

(Emphasis added.) Under this provision, a recorded abstract must be an abstract of an instrument of conveyance to effectuate the transfer of property.

¶18 We have recognized the general distinction between a warranty deed, which immediately transfers a property interest, and an executory contract for sale and purchase of property, which states conditions precedent to a transfer of property. *Dobitz v. Oakland*, 172 Mont. 126, 130, 561 P.2d 441, 443 (1977) ("legal title does not pass until the conveyance is actually made"). "A contract for deed is, by definition, an executory contract. It is an agreement by a seller to deliver the deed to property when certain conditions have been met. . . ." *Tungsten Holdings v. Olson*, 2002 MT 158, ¶ 16, 310 Mont. 374, 50 P.3d 1086 (citing *Dobitz*, 172 Mont. 126, 561 P. 2d 441) (internal citation omitted). This general distinction undermines a claim that a contract for deed, executory in nature,

13

conveyed a property interest, because it generally would not pass title before satisfaction of the contract conditions and the recording of a deed.

¶19     It is upon this distinction that the doctrine of merger by deed is premised. Following performance of the contract, and upon execution of a deed, the provisions of the contract for sale merge into the deed and any non-collateral terms are extinguished. *Urquhart v. Teller*, 1998 MT 119, ¶ 28, 288 Mont. 497, 958 P.2d 714. "Thus, when a deed has been executed, the purchaser's rights are generally found in the deed covenants, not the executed contract." *Richman*, ¶ 21 (citing *Urquhart*, ¶ 28). Consequently, the executory contract for deed entered by the parties would not have served as the instrument of conveyance for the transaction; conveyance would have occurred by way of the contracted warranty deed. But here, that deed, transferring the Claimed Easement as provided in the contract, was never recorded, and Stanzak's predecessors did not obtain that property interest. Instead, Rose subsequently delivered deeds conveying property interests by reference to COS 2233 and COS 2276, neither of which referenced the Claimed Easement. These deficiencies are not overcome by Stanzak's sequential statutory argument under the recording statutes. *See also Blakely v. Kelstrup*, 218 Mont. 304, 305, 708 P.2d 253, 254 ("Recordation is a device to establish priority, but has nothing to do with conveying title. The purpose of recording instruments is to give notice to subsequent purchasers and encumbrancers. Unless it is the intention of the parties that recording the deed passes title it does not do so.").

¶20     Stanzak's sole claim for title to the Claimed Easement is based on the NPI and its reference to COS 569. However, neither the NPI, nor the abstracted contract for deed

14

effectuated title transfer.  There was, therefore, no actual conveyance on which Stanzak can base their claim.

¶21     Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA